## Exhibit A

**Revised Proposed Bid Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| ROYAL INTERCO, LLC, *et. al.,* | Case No. 25-10674 (TMH) |
| Debtors.[1] | Jointly Administered |
| | **Re: D.I. 15** |

**ORDER PURSUANT TO SECTIONS 105, 363, 364, 365 AND 541 OF THE
BANKRUPTCY CODE, BANKRUPTCY RULES 2002, 6004, 6006 AND 9007 AND DEL.
BANKR. L.R. 2002-1 AND 6004-1 (A) APPROVING BID PROCEDURES FOR THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS;
(B) APPROVING THE DEBTORS' ENTRY INTO STALKING HORSE AGREEMENT
AND RELATED BID PROTECTIONS; (C) APPROVING PROCEDURES FOR THE
ASSUMPTION AND ASSIGNMENT OR REJECTION OF DESIGNATED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) SCHEDULING AN
AUCTION AND SALE HEARING; (E) APPROVING FORMS AND MANNER OF
NOTICE OF RESPECTIVE DATES, TIMES, AND PLACES IN CONNECTION
THEREWITH; AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (the

"Debtors") in the above-captioned jointly administered chapter 11 cases, for entry of an order,

pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the

"Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"),

(i) authorizing and approving certain proposed bid procedures (as attached hereto as **Exhibit 1**,

the "Bid Procedures") governing the submission of competing proposals to purchase the Acquired

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: Royal Interco, LLC (7913); Doubletree Paper Mills, L.L.C. (1830); Royal Paper, LLC (9937); and Sun Paper Company, LLC (7899). The Debtors' mailing address is 711 North 17th Avenue, Phoenix, AZ 85007.

[2] Capitalized terms not defined herein are defined in the Motion.

Assets pursuant to section 363 of the Bankruptcy Code, authorizing and approving the Debtors'

entry into (but not consummation of) the Asset Purchase Agreement (substantially in the form

attached to the Motion as **Exhibit B** and, together with all exhibits and schedules thereto, the

"Stalking Horse Agreement"), by and among the Debtors and Sofidel America Corp. (the "Stalking

Horse Bidder"), pursuant to which the Debtors have agreed to sell the Acquired Assets to the

Stalking Horse Bidder, subject to the terms and conditions contained in the Stalking Horse

Agreement, (iii) approving the form and manner of notice of the sale of the Acquired Assets (the

"Sale Notice"), (iv) scheduling a hearing for approval of the sale of the Acquired Assets (the "Sale

Hearing") and setting other related dates and deadlines and (v) approving procedures for the

assumption and assignment of the Debtors' executory contracts (the "Contracts") and unexpired

leases (the "Leases") and the form of and manner of notice of proposed cure amounts; and it

appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their

creditors and all other parties in interest; and after due deliberation, and good and sufficient cause

appearing therefor,

## IT IS HEREBY FOUND AND DETERMINED THAT:

A.      This Court has jurisdiction to consider the Motion in accordance with 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

District Court for the District of Delaware, dated as of February 29, 2012.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court

may enter a final order consistent with Article III of the United States Constitution. Venue of this

proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory and legal predicates for the relief requested in the Motion and

provided for herein are sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code,

Bankruptcy Rules 2002, 6004 and 6006, and Local Rule 6004-1.

D.     Good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b) and all other interested parties.

E.     The Debtors have articulated good and sufficient reasons for the Court to approve the Bid Procedures. Such good and sufficient reasons were set forth in the Motion, are incorporated by reference herein, and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

F.     The Bid Procedures are fair, reasonable and appropriate and are designed to maximize the value to be received by the Debtors' estates and creditors. The Bid Procedures and all such steps taken by the Debtors in connection with the implementation of the Bid Procedures and this Order shall be deemed reasonable and appropriate and within the sound business judgment of the Debtors pursuant to section 363(b) of the Bankruptcy Code.

G.     The Stalking Horse Agreement was entered into in good faith by the Debtors and the Stalking Horse Bidder, and is the result of a good faith, arms-length negotiation between the parties that are each represented by sophisticated legal counsel.

H.     The Debtors have demonstrated compelling and sound business justifications for entering into the Stalking Horse Agreement and incurring the administrative obligations arising thereunder or in connection therewith, and the timing and procedures set forth therein.

I.     The Sale Notice, substantially in the form attached hereto as **Exhibit 3**, is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale, including: (i) the date, time and place of the Auction (if one is held), (ii) the Bid Procedures

and certain dates and deadlines related thereto, (iii) the objection deadline for the sale motion and the date, time and place of the Sale Hearing, (iv) instructions for promptly obtaining a copy of the Stalking Horse Agreement, (v) representations describing the proposed sale as being free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds, and (vi) notice of the proposed assumption and assignment of Contracts and Leases to either an affiliate of the Stalking Horse Bidder or an affiliate of any designee of the Stalking Horse Bidder (such party, the "Contract Party") pursuant to the Stalking Horse Agreement (or to another Successful Bidder selected at the Auction, if any) and the procedures and deadlines for objecting thereto. No other or further notice of the proposed Sale shall be required.

J.      The Cure Notice attached hereto as **Exhibit 2** is reasonably calculated to provide all non-Debtor counterparties to the Debtors' Contracts and Leases with proper notice of the potential assumption and assignment of their Contract or Lease, the proposed cure amounts relating thereto and the related assumption and assignment procedures; provided that the mere listing of any Contract or Lease on the Cure Notice does not require or guarantee that such Contract or Lease will be assumed and assigned, and all rights of the Debtors with respect to such Contracts and Leases are reserved.

K.      The Bid Procedures comply with the requirements of Local Rule 6004-1.

L.      Entry of this Order is in the best interests of the Debtors' estates, their creditors and all other interested parties.

M.      To the extent payable under this Order and in accordance with the Stalking Horse Agreement, the Bid Protections: (i)(a) are actual and necessary costs of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code and (b) shall be

treated as an allowed superpriority administrative claim status in the Chapter 11 Cases pursuant to section 507(b) of the Bankruptcy Code; (ii) are commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) are reasonably tailored to encourage, rather than chill, bidding for the Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Assets; (iv) are a material inducement for, and condition necessary to, ensure that the Stalking Horse Bidder will continue to pursue the transaction contemplated by the Stalking Horse Agreement; and (v) are reasonable in relation to the Stalking Horse Bidder's efforts and to the magnitude of the proposed transaction and the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing such transaction. Unless it is assured that the Bid Protections are available, the Stalking Horse Bidder is unwilling to remain obligated to consummate the transaction or otherwise be bound by the Stalking Horse Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is hereby **GRANTED** as set forth herein.

2.      All objections filed, if any, in response to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections, are specifically overruled in all respects on the merits.

**<u>The Bid Procedures</u>**

3.      The Bid Procedures attached hereto as **<u>Exhibit 1</u>** are approved, and the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bid Procedures. To the extent of any conflict between the Bid Procedures and this Order, the Bid Procedures shall govern.

4.      The Bid Procedures shall govern the submission, receipt and analysis of all Bids, and any party desiring to submit a higher acceptable offer shall do so strictly in accordance with the terms of this Order and the Bid Procedures.

5.      The following dates and deadlines regarding competitive bidding are hereby established (subject to modification in accordance with the Bid Procedures):

    a.  **<u>Bid Deadline</u>: May 12, 2025 at 4:00 p.m. (Prevailing Eastern Time)** is the deadline by which all Qualified Bids must be actually received by the parties specified in the Bid Procedures (the "<u>Bid Deadline</u>").

    b.  **<u>Auction</u>: May 15, 2025 at 10:00 a.m. (Prevailing Eastern Time)** is the date and time of the Auction, if one is needed, which will be held at the offices of Morris Nichols Arsht & Tunnell LLP 1201 North Market Street, Wilmington, DE 19801; *provided, however*, that the Debtors, in their discretion, shall have the right to hold the Auction at another place or virtually, with instructions for Qualified Bidders to participate to be provided prior to the Auction, with notice to all Qualified Bidders and any other invitees, including the Consultation Parties.

6.      Only a Qualified Bidder that has submitted a Qualified Bid by the Bid Deadline will be eligible to participate at the Auction. As described in the Bid Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder, the Debtors may cancel the Auction, name the Stalking Horse Bidder as the Successful Bidder, and seek final approval at the Sale Hearing of the sale of the Acquired Assets to the Stalking Horse Bidder, in accordance with the terms of the Stalking Horse Agreement.

7.      If the Auction is conducted, (i) each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the sale, (ii) each Qualified Bidder participating in the Auction shall be required to confirm that its Qualified Bid is a good faith, bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bidder and (iii) the Auction shall be conducted openly and shall be transcribed or videotaped.

### Approval of Debtors' Entry into the Stalking Horse Agreement

8.      The Debtors are hereby authorized to designate Sofidel America Corp., together with any designated affiliate thereof, as the Stalking Horse Bidder.

9.      The Debtors are authorized, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to enter into and perform under the Stalking Horse Agreement, subject to the solicitation of higher or otherwise better offers for the Acquired Assets (as defined in the Stalking Horse Agreement) and entry of the Sale Order. Subject to entry of the Sale Order, the Stalking Horse Agreement shall be binding and enforceable on the Debtors' estates, the Stalking Horse Bidder and any other parties thereto in accordance with and subject to its terms, including as they relate to the Bid Procedures and related termination provisions.

10.      The Stalking Horse Agreement is authorized and approved in the form attached to the Bid Procedures Motion as Exhibit B as the stalking horse bid for the Acquired Assets (the "Stalking Horse Bid").

11.      The Stalking Horse Bidder shall be deemed a Qualified Bidder, and the Stalking Horse Bid shall be deemed a Qualified Bid, for all purposes under the Bid Procedures Order and Bid Procedures.

12.      The failure to describe specifically or include any provision of the Stalking Horse Agreement or related documents in the Motion or herein shall not diminish or impair the

effectiveness of such provision as to such parties. The Stalking Horse Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, solely in accordance with the terms thereof, without further order of the Court.

13.     The Bid Protections are approved in their entirety and (i) shall, to the extent payable under the terms of the Stalking Horse Agreement, be treated as allowed superpriority administrative claim status in the Chapter 11 Cases pursuant to section 507(b) of the Bankruptcy Code; (ii) shall not be subject to any bar date in these Chapter 11 Cases or any requirement to file any request for allowance of an administrative expense claim or proof of claim; (iii) shall be payable in accordance with the terms of and subject to the conditions set forth in the Stalking Horse Agreement; and (iv) shall survive the termination of the Stalking Horse Agreement and dismissal or conversion of these Chapter 11 Cases pursuant to the terms in the Stalking Horse Agreement. The Debtors shall file a notice on the docket of these chapter 11 cases in the event that the Bid Protections are paid by the Debtors or their estates.

14.     Subject to the Bid Procedures and entry of the Sale Order, the Debtors and Stalking Horse Bidder are granted all rights and remedies provided to them under the Stalking Horse Agreement, including, without limitation, the right to specifically enforce the Stalking Horse Agreement (including with respect to the Bid Protections and the Deposit) in accordance with its terms.

15.     The Debtors are authorized to perform all of their respective pre-closing obligations under the Stalking Horse Agreement, and such obligations shall be binding upon the Debtors; provided that, for the avoidance of doubt, consummation of the transactions contemplated by the Stalking Horse Agreement shall be subject to entry of an order approving the sale of the

Acquired Assets (the "Sale Order") and the satisfaction or waiver of the other conditions to closing on the terms set forth in the Stalking Horse Agreement.

16.     This Order, and the claims granted hereunder in favor of the Stalking Horse Bidder on account of the Bid Protections, shall be binding upon the Debtors' estates, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the Debtors' estates.

17.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Stalking Horse Bidder to (i) deliver any notice provided for in the Stalking Horse Agreement, including, without limitation, a notice terminating the Stalking Horse Agreement in accordance with the terms thereof and (ii) take any actions permitted under the Stalking Horse Agreement to terminate the Stalking Horse Agreement, solely to the extent permitted by the Stalking Horse Agreement, and assert any claims with respect to the Bid Protections. All rights of the Debtors' and their estates with respect to the foregoing shall be preserved.

**Hearing and Objection Deadline**

18.     The Sale Hearing shall take place in this Court on **May 22, 2025 at 10:00 a.m. (Prevailing Eastern Time)**; *provided* that the Sale Hearing may be adjourned by the filing of a notice on the docket of these Cases or a notice of agenda. Any obligations of the Debtors set forth in the Stalking Horse Agreement that are intended to be performed prior to the Sale Hearing and/or entry of the Sale Order pursuant to the Stalking Horse Agreement are authorized as set forth herein and are fully enforceable as of the date of entry of this Order.

19.     The deadline to file objections, if any, to the transactions contemplated by the Stalking Horse Agreement or to entry of the Sale Order is **May 12, 2025 at 4:00 p.m. (Prevailing Eastern Time)** (the "Sale Objection Deadline"). Objections, if any, **must**: (i) be in

writing, (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Rules and any orders of the Court, (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor, and (iv) be filed with the Court and served so as to be **actually received** no later than the Sale Objection Deadline, as applicable, by the following parties (the "Notice Parties"): (a) the Debtors, 711 N. 17th Avenue, Phoenix, AZ 85007, Attn: Michael Ragano (mragano@novo-advisors.com) and Dustin Bernstein (dbernstein@novo-advisors.com); (b) proposed counsel to the Debtors, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street. 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Robert J. Dehney, Sr. (rdehney@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); Scott D. Jones (sjones@morrisnichols.com); Clint M. Carlisle (ccarlisle@morrisnichols.com); and Brianna N. V. Turner (bturner@morrisnichols.com); (c) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"): 844 King Street, Room 2207, Wilmington, Delaware 19801, Attn: Linda J. Casey (Linda.Casey@usdoj.gov); (d) proposed counsel to the Official Committee of Unsecured Creditors (the "Committee"): (i) Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, New Jersey 07068, Attn: Andrew D. Behlmann (abehlmann@lowenstein.com); Colleen M. Restel (crestel@lowenstein.com); 1251 Avenue of the Americas, New York, NY 10020, Bruce S. Nathan (bnathan@lowenstein.com); and Lindsay H. Sklar (lsklar@lowenstein.com); and (ii) Gellert Seitz Busenkell & Brown, LLC 1201 N. Orange St., Suite 300 Wilmington, Delaware 19801; Attn: Michael Busenkell (mbusenkell@gsbblaw.com); (e) counsel to the Stalking Horse Bidder: (i) Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York NY 10006, Attn: Sean A. O'Neal (soneal@cgsh.com) and Thomas Kessler (tkessler@cgsh.com) and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Sean T. Greecher (sgreecher@ycst.com); and (f)

counsel to NXT Capital, LLC: (i) Goldberg Kohn, 55 E Monroe St, Suite 3300. Chicago, IL 60603, Attn: Randall Klein (randall.klein@goldbergkohn.com); Prisca Kim (prisca.kim@goldbergkohn.com); and Eva D. Gadzheva (eva.gadzheva@goldbergkohn.com).

## Sale Notice and Related Relief

20.     The Sale Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved. The Sale Notice was served upon: (a) the United States Trustee for the District of Delaware; (b) the creditors listed on the Debtors' consolidated list of thirty (30) largest unsecured creditors, as filed with the Debtors' chapter 11 petitions, (c) the Committee; (d) all parties asserting a security interest in the Acquired Assets to the extent any such interest is reasonably known to the Debtors; (e) applicable federal, state, county and city tax and regulatory authorities; (f) all entities known to have expressed a written interest in a transaction with respect to the Acquired Assets or that have been identified by the Debtors or their advisors as a potential purchaser of the Acquired Assets; (g) local, state and federal authorities and agencies that have issued licenses or permits to the Debtors with respect to the operation and use of the Acquired Assets; (h) each counterparty to the Debtors' Contracts and Leases; and (i) all parties entitled to notice pursuant to Bankruptcy Rule 2002-1.

## Designation and Assumption Procedures

21.     The procedures set forth below regarding the proposed assumption and assignment of certain Contracts and Leases that may be designated to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Contract Party (or the Successful Bidder selected at the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code (as defined in the Stalking Horse Agreement, collectively, the "Assigned Contracts and Leases") in connection with the sale of the Acquired Assets are hereby approved (the "Designation Procedures").

22.     These Designation Procedures, as may be modified or supplemented by the

Sale Order, shall govern the assumption and assignment of all Assigned Contracts and Leases:

a.      **Cure Notice.** The Debtors filed with the Court a notice of the proposed assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale, substantially in the form attached as **Exhibit 2** to the Bid Procedures Order (the "Cure Notice"). The Debtors served the Cure Notice via first class mail on all non-Debtor counterparties to Contracts and Leases, and their respective known counsel, and provided a copy of same to the Contract Party and the Stalking Horse Bidder. The Cure Notice informed each recipient that its respective Contract or Lease may be designated by the Contract Party (as defined below) as either assumed or rejected and the timing and procedures relating to such designation, and, to the extent practicable (i) the title of the Contract or Lease, (ii) the name of the counterparty to the Contract or Lease, (iii) the Debtors' good faith estimates of the cure amounts required in connection with such Contract or Lease (the "Cure Amount"), (iv) the identity of the Contract Party and (v) the deadline by which any such Contract or Lease counterparty may file an objection to the proposed assumption and assignment and/or cure amount, and the procedures relating thereto; provided, however, that service of a Cure Notice does not constitute an admission that such Contract or Lease is an executory contract or unexpired lease. If the Debtors identify additional Contracts or Leases that might be assumed by the Debtors and assigned to the Contract Party, the Debtors will promptly send a supplemental Cure Notice to the applicable counterparties to such Contract or Lease.

b.      **Adequate Assurance**. The Debtors served by overnight mail (or by electronic mail, if available) the evidence of adequate assurance of future performance under the Contracts and Leases provided in connection with the Stalking Horse Bidder, including the legal name of the proposed assignee, the proposed use of any leased premises, general information about the proposed assignee's financial wherewithal and a contact person with the proposed assignee whom counterparties may contact if they wish to obtain further information regarding the proposed assignee. No later than three (3) days after the Bid Deadline, the Debtors shall serve on affected counterparties and their respective known counsel by electronic mail (if available) or overnight mail the adequate assurance information provided by each Qualified Bidder.

c.      **Objections**. Objections, if any, to the proposed assumption and assignment of any Contract or Lease or to the cure amount proposed with respect thereto must: (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any other orders of the Court, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served so as to be actually received by the Notice Parties before the Sale Objection Deadline.

Following the Debtors' selection of the Successful Bidder and the Back-Up Bidder, if any, at the conclusion of the Auction, the Debtors shall announce the Successful Bidder and the Back-Up Bidder, if any, and shall file with the Court a notice of the Successful Bidder and the Back-Up Bidder, if any. If and only if the Stalking Horse Bidder is not the Successful Bidder for the Acquired Assets, counterparties to the Debtors' Contracts and Leases shall have until the Sale Hearing (the "<u>Supplemental Adequate Assurance Objection Deadline</u>") to object to the assumption and assignment of a Contract or Lease (a "<u>Supplemental Adequate Assurance Objection</u>") solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code. For the avoidance of doubt, if the Stalking Horse Bidder is the Successful Bidder, all adequate assurance objections must be filed by the Sale Objection Deadline.

d.   **Dispute Resolution**. Any objection to the proposed assumption and assignment or related cure of a Contract or Lease in connection with the proposed sale that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing or such later hearing if the objection is not resolved and the Debtors determine that an adjournment is appropriate. To the extent any such objection is resolved or determined unfavorably to the applicable Debtor, the Debtors may, subject to the terms of an agreement with the Successful Bidder, file a notice rejecting the applicable Contract or Lease after such determination.

23.   Any party who fails to timely file an objection to its scheduled cure amount listed on the Cure Notice or to the assumption and assignment of a Contract or Lease (i) shall be forever barred and estopped from objecting thereto, including (a) making any demands for additional cure amounts or monetary compensation on account of any alleged defaults for the period prior to the applicable objection deadline against the Debtors, their estates or the Contract Party or the Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any, with respect to any such Contract or Lease, and (b) asserting that the Contract Party or the Successful Bidder has not provided adequate assurance of future performance as of the date of the Sale Order; (ii) shall be deemed to consent to (a) the sale of the Acquired Assets as approved by the Sale Order and (b) the assumption and assignment of the Contracts and Leases; and (iii) shall be forever barred and estopped from asserting or claiming against the Debtors or the assignee of the relevant

Contract or Lease that any conditions to assumption and assignment of such Contract or Lease must be satisfied (pursuant to section 365(b)(1) of the Bankruptcy Code or otherwise).

24.     The proposed assumption and assignment of the Assigned Contracts and Leases and the Auction shall be conducted solely in accordance with the provisions of this Order, the Bid Procedures and the Designation Procedures, as applicable.

25.     Except as otherwise provided herein and in the Bid Procedures, Local Rule 6004-1(c)(ii) is waived.

26.     Nothing in this Order shall be construed to modify the requirements and provisions of sections 365(b), 365(d)(3), 365(d)(4) or 365(f) of the Bankruptcy Code, or to determine the effective date of rejection for any Contract or Lease which the Debtors may seek to reject.

## Other Relief Granted

27.     The Debtors are authorized to execute and deliver all instruments and documents and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

28.     The requirements set forth in Local Rule 9013-1 are satisfied by the contents of the Motion.

29.     The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are adopted as such.

30.     To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.

31.     This Order shall be immediately effective and enforceable upon entry hereof.

32.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

**EXHIBIT 1 To Bid Procedures Order**

**Bid Procedures**

**BID PROCEDURES**

On April 8, 2025, Royal Interco, LLC, Royal Paper, LLC, Doubletree Paper Mills, L.L.C. and Sun Paper Company, LLC, debtors and debtors in possession (collectively, the "Debtors") in the chapter 11 cases (the "Cases") pending in the United States Bankruptcy Court for the District of Delaware ("Court") and jointly administered under Case No. 25-10674 (TMH), filed a motion [D.I. [_]] (the "Sale Motion"), seeking, among other things, authorization for the Debtors to perform their obligations under that certain Asset Purchase Agreement (together with all exhibits thereto, the "Stalking Horse Agreement")[3] entered into by and among the Debtors and Sofidel America Corp. (the "Stalking Horse Bidder"), substantially in the form attached to the Sale Motion as Exhibit [•], subject to higher and better bids for the Acquired Assets as described below. As described in the Sale Motion, the Stalking Horse Agreement contemplates, pursuant to the terms and subject to the conditions contained therein, the sale of the Acquired Assets in exchange for cash consideration in (i)(A) the amount of One Hundred Twenty-Six Million US Dollars (US$ 126,000,000) (the "Base Purchase Price"), plus (B) the Inventory Adjustment Amount, minus (C) the Sale Leaseback Adjustment, minus (D) the Cure Costs Adjustment Amount (the result of the forgoing calculation, the "Cash Purchase Price") and (ii) the assumption by Purchaser of the Assumed Liabilities including payment of the Cure Amounts.

The Stalking Horse Agreement provides for payment of bid protections in the form of a break-up fee in the amount of Three Million Seven Hundred and Eighty Thousand US Dollars (US$ 3,780,000) (the "Break-Up Fee") and a reimbursement of the Stalking Horse Bidder's actual, reasonable, documented out-of-pocket expenses up to an amount not to exceed US$ 1,260,000 (the "Expense Reimbursement," together with the Break-Up Fee, the "Bid Protections").

The Court entered the Order *(A) Authorizing and Approving Bid Procedures, (B) Authorizing and Approving the Debtors' Entry Into the Stalking Horse Agreement, (C) Approving Notice Procedures, (D) Scheduling a Sale Hearing and (E) Approving Procedures for Assumption and Assignment and Determining Cure Amounts* (the "Bid Procedures Order"), which, among other things, (i) authorized the Debtors to perform their pre-closing obligations under the Stalking Horse Agreement and (ii) approved the bidding procedures set forth herein (the "Bid Procedures") governing the submission of competing proposals to purchase the Acquired Assets pursuant to section 363 of the Bankruptcy Code. The sale of the Acquired Assets will be implemented pursuant to the terms and conditions of the Bid Procedures Order and the Stalking Horse Agreement, as the same may be amended pursuant to the terms thereof, subject to the Debtors' selection in their reasonable discretion, after consultation with the Official Committee of Unsecured Creditors (the "Committee"), NXT Capital, LLC, as administrative agent for the Debtors' senior secured lenders (in such capacity, "Prepetition Agent") and "Postpetition Agent" (as defined in the interim and final orders authorizing the Debtors to obtain postpetition financing and use of cash collateral (the "DIP Orders"), the "Postpetition Agent"; together with Prepetition Agent, the "Agents"), each "Lender" (as defined in the Credit Agreement[4], the "Prepetition Lenders") and each "Postpetition Lender" (as defined in the DIP Orders, the "Postpetition Lenders"; together with the Prepetition

---

[3]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Stalking Horse Agreement.

[4]     Certain of the Sellers, as borrowers, the Agent and the Lenders are parties to that certain Credit Agreement dated as of June 15, 2018 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement").

Lenders, the "<u>Lenders</u>") (the Committee, Agents and Lenders are hereinafter referred to as the "<u>Consultation Parties</u>"), of a higher and otherwise better bid as the Successful Bid (as defined below) in accordance with these Bid Procedures.

### Notice Parties

Information required to be provided under these Bid Procedures must be provided to the following parties (collectively, the "<u>Notice Parties</u>"): (a) the Debtors, 711 N. 17th Avenue, Phoenix, AZ 85007, Attn: Michael Ragano (mragano@novo-advisors.com) and Dustin Bernstein (dbernstein@novo-advisors.com); (b) counsel to the Debtors: Morris, Nichols, Arsht & Tunnell LLP ("<u>Morris Nichols</u>"), 1201 N. Market Street. 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Robert J. Dehney, Sr. (rdehney@morrisnichols.com); Matthew O. Talmo (mtalmo@morrisnichols.com); Clint M. Carlisle (ccarlisle@morrisnichols.com); and Grace E. Venit (gvenit@morrisnichols.com); (c) Livingstone Partners LLC ("<u>Livingstone</u>"), 443 North Clark St, Chicago, IL 60654, Attn: Joseph Greenwood (greenwood@livingstonepartners.com) and Adam Green (green@livingstonepartners.com); (d) the Office of the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"): 844 King Street, Room 2207, Wilmington, Delaware 19801, Attn: Linda J. Casey (Linda.Casey@usdoj.gov); and (e) counsel to NXT Capital, LLC: (i) Goldberg Kohn, 55 E Monroe St, Suite 3300. Chicago, IL 60603, Attn: Randall Klein (randall.klein@goldbergkohn.com); Prisca Kim (prisca.kim@goldbergkohn.com); and Eva Gadzheva (eva.gadzheva@goldbergkohn.com); and (ii) Richards Layton & Finger, 920 N. King Street, Wilmington, Delaware 19801, Attn: John Knight (knight@rlf.com) and Paul Heath (heath@rlf.com); and (f) proposed counsel to the Committee: (i) Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, New Jersey 07068, Attn: Andrew D. Behlmann (abehlmann@lowenstein.com); Colleen M. Restel (crestel@lowenstein.com); 1251 Avenue of the Americas, New York, NY 10020, Bruce S. Nathan (bnathan@lowenstein.com); and Lindsay H. Sklar (lsklar@lowenstein.com); and (ii) Gellert Seitz Busenkell & Brown, LLC 1201 N. Orange St., Suite 300 Wilmington, Delaware 19801; Attn: Michael Busenkell (mbusenkell@gsbblaw.com).

### Key Dates

| Event | Deadline |
|---|---|
| Deadline for Debtors to File Notice of Proposed Cure Amounts and Adequate Assurance | Five (5) business days after the Petition Date |
| Bid Procedures Hearing | May 1, 2025 |
| Sale Objection Deadline | May 12, 2025, at 4:00 p.m. (ET) |
| Bid Deadline | May 12, 2025, at 4:00 p.m. (ET) |
| Deadline to Designate Qualified Bids | May 14, 2025 |
| Auction | May 15, 2025, at 10:00 a.m. (ET) |
| Deadline to Serve Notice of Winning Bidder and Supplemental Cure Notice | One (1) business day after the close of the auction |
| Deadline to File Supplemental Sale Objection and Objection to Assumption or Cure Amount (If Winning Bidder is Different Than Stalking Horse Bidder) | May 19, 2025, at 11:59 p.m. (ET) |

| Deadline to File Objection to Assumption or Cure Amount (If Winning Bidder is Different Than Stalking Horse Bidder) | Sale Hearing |
|---|---|
| Sale Hearing | May 22, 2025 |

## **Participation Requirements**

To participate in the formal bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a bid (an "<u>Interested Party</u>") must deliver to the Debtors, Morris Nichols, and Livingstone an executed confidentiality agreement substantially in the form previously sent to Agents' counsel on March 7, 2025 (each, a "<u>Confidentiality Agreement</u>"). Such person or entity that has delivered an executed Confidentiality Agreement shall be considered a potential bidder (a "<u>Potential Bidder</u>").

## **Due Diligence**

The Debtors will provide to each Potential Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, provided that if any Potential Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors will not be required to disclose to such Potential Bidder any trade secrets, proprietary information, or other commercially sensitive information unless, under the Debtors' business judgment in consultation with the Consultation Parties, the Confidentiality Agreement executed by such Potential Bidder (i) sufficiently protects the Debtors' estates, and (ii) contains appropriate provisions to ensure that such trade secrets or proprietary information will not be used by such Potential Bidder or its Affiliates for an improper purpose or to gain an unfair competitive advantage. Each Potential Bidder will comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Potential Bidder and its contemplated transaction. If the Debtors, after consultation with the Consultation Parties, determine at any time in their reasonable discretion that a Potential Bidder is not reasonably likely to be a Qualified Bidder (as defined below), then the Debtors' obligation to provide due diligence information to such Potential Bidder will terminate and all information provided by the Debtors prior to such time shall be returned to the Debtors or destroyed in accordance with the terms of the applicable Confidentiality Agreement.

## **Bid Requirements**

To be eligible to participate in the Auction, each Potential Bidder must submit a proposal (a "<u>Bid</u>")[5] to purchase some or all of the Debtors' assets by May 12, 2025 at 4:00 p.m. (ET) (the "<u>Bid Deadline</u>") which must:

    1)    state that the applicable Potential Bidder offers to purchase the Acquired Assets upon terms and conditions no less favorable to the Debtors' estates as the Debtors, in consultation with the Consultation Parties, may

---

[5]    Promptly (and in any event within 1 business day after receipt), Debtors will provide all Bids (and all related materials) to the Agents and Committee.

reasonably determine, than the transactions contemplated in the Stalking Horse Agreement;

2)      be accompanied by a deposit (each, a "<u>Good Faith Deposit</u>") in the form of a wire transfer or certified check or such other form acceptable to the Debtors in their sole discretion, payable to the order of Kurtzman Carson Consultants, LLC dba Verita Global (the "<u>Escrow Agent</u>"), in an amount equal to 10% of the cash portion of the Purchase Price being bid;

3)      specify the amount of cash or other consideration offered by the Potential Bidder (the "<u>Purchase Price</u>"), which Purchase Price must, except for a Partial Bid (defined below): (a) exceed the aggregate sum of (i) the aggregate consideration set forth in the Stalking Horse Agreement; (ii) the Assumed Liabilities set forth in the Stalking Horse Agreement; (iii) the Bid Protections, and (iv) the minimum bid increment of $500,000; and (b) include an amount of cash consideration at closing that exceeds the aggregate sum of (i), (iii) and (iv) (such aggregate sum specified in (a) and (b), the "<u>Minimum Purchase Price</u>").

4)      include an executed asset purchase agreement, together with all exhibits and schedules thereto, pursuant to which the Potential Bidder proposes to effectuate a proposed transaction at the Purchase Price (the "<u>Transaction Documents</u>"), which Transaction Documents must include a copy of the proposed asset purchase agreement marked against the Stalking Horse Agreement to show all changes requested by the Potential Bidder including, but not limited to, treatment of any assumed liabilities;

5)      be irrevocable by the Potential Bidder until the selection of the Successful Bid in accordance with the terms of these Bid Procedures; *provided* that if such Potential Bidder is selected as the Successful Bidder or Back-Up Bidder and is required to be a Back-Up Bidder hereunder, its Bid must remain irrevocable until the Debtors' consummation of a sale with the Successful Bidder;

6)      include a list which specifies in detail which of the Debtors' unexpired leases and executory contracts are to be assumed by the Debtors and assigned to the Potential Bidder in connection with the consummation of the proposed transaction and an agreement that the Potential Bidder will pay any related cure costs;

7)      contain a description of how the Potential Bidder intends to treat the Debtors' current employees;

8)      provide a commitment to close by June 13, 2025, subject to any necessary filings required by the HSR Act and review processes associated therewith;

9)    not be conditioned on any contingency, including unperformed due diligence, obtaining financing, obtaining third-party consents, or any internal approval;

10)    include an acknowledgement that the sale or transfer of the Acquired Assets will be on an "as is, where is" basis and without representations or warranties of any kind by Debtors or their agents other than as set forth in the Stalking Horse Agreement;

11)    include (i) a description of all governmental, licensing, regulatory or other filings, approvals or consents, including all filings required under the HSR Act, that are required to be made or obtained to close the proposed transaction, together with evidence of the ability to make any applicable filings or submissions within three (3) business days of being declared the Successful Bidder;

12)    contain written evidence of a commitment for financing or other evidence of the ability to consummate a proposed transaction at the Purchase Price (including sufficient financial or other information to establish adequate assurance of future performance pursuant to section 365(f)(2) of the Bankruptcy Code and, if applicable, section 365(b)(3) of the Bankruptcy Code to the non-Debtor counterparties to any executory contracts and unexpired leases to be assumed by the Debtors and assigned to the Potential Bidder in connection with the proposed transaction), satisfactory to the Debtors in their reasonable discretion with appropriate contact information for such financing sources;

13)    contain written evidence satisfactory to the Debtors, after consultation with the Consultation Parties, of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and consummation of such Bid and the transaction(s) contemplated therein and any Overbid(s) (as defined below), and related Transaction Documents;

14)    not request or entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment (except to the extent consented to in writing by Debtors after consultation with Agents);

15)    fully disclose the identity of each entity that will be bidding for the Acquired Assets or otherwise sponsoring, financing (including through the issuance of debt in connection with such Bid), participating in or benefiting from (including through license or similar arrangement with respect to the assets to be acquired in connection with such Bid) such Bid (a "<u>Participating Party</u>"), and the complete terms of any such sponsorship, participation, financing or benefit;

16)    constitute good faith, bona fide offer to effectuate the proposed transaction;

5

17) include a written acknowledgement by such Potential Bidder that it agrees to all of the terms for sale set forth in these Bid Procedures;

18) include an agreement to provide any other information reasonably requested by the Debtors; and

19) be received by the Bid Deadline.

## Designation as Qualified Bidder

A qualified bidder ("Qualified Bidder") is a Potential Bidder that, in the Debtors' reasonable determination, after consultation with the Consultation Parties, (i) has timely submitted a Bid that satisfies each of the requirements listed above in the section entitled "Bid Requirements" and (ii) is able to consummate the proposed transaction within the required timeframe if selected as the Successful Bidder (such Bid submitted by a Qualified Bidder, a "Qualified Bid"); *provided* that the Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid. Within two (2) business days after a Potential Bidder delivers all of the documents described above, the Debtors will determine in their reasonable discretion, after consultation with the Consultation Parties, whether such Potential Bidder is a Qualified Bidder, and notify the Potential Bidder of such determination. For the avoidance of doubt, (i) the Stalking Horse Bidder is a Qualified Bidder, (ii) the Stalking Horse Agreement is a Qualified Bid, and (iii) the Stalking Horse Bidder is authorized to submit any Overbids (as defined below) during the Auction, in each instance without further qualification required of the Stalking Horse Bidder.

Notwithstanding anything herein to the contrary, without any further action of any kind: (a) each Agent (and any designee of each Agent, including, without limitation, any entity that may be formed by or on behalf of any of the applicable Lenders and each Lender (and any designee of such Lender) may submit a Bid and, in connection with any such Bid, is, and will be deemed to be, a Qualified Bidder for all purposes under and in connection with these Bid Procedures and may credit bid all or any portion of the Prepetition Debt and the Postpetition Debt (each as defined in the DIP Orders) in accordance with applicable law, including, without limitation, at any Auction; (b) any credit bid made by any Agent or any Lender (or such designee) is, and will be deemed to be, a Qualified Bid in each instance and for all purposes under and in connection with the Bid Procedures and will be deemed to be, and will be evaluated by the Debtors, and the Consultation Parties as, a cash Qualified Bid; and (c) subject to the proviso at the end of this sentence, Agents, Lenders and such designees will not be subject to the terms and conditions of the section entitled "Bid Requirements": clauses (2), (3), (9), (11), (12), (13), and (18); provided, however, that (x) such Agent or such Lender (or any designee thereof) submitting a credit bid will provide a Good Faith Deposit, provided that such Good Faith Deposit shall consist of a reduction in the applicable secured claim of such Agent or such Lender in the Cases and will not be payable in cash notwithstanding anything to the contrary in these Bid Procedures and (y) any such bid must provide for the payment in full in cash of the Bid Protections, *provided, however*, that any Bid submitted by the Agents and Lenders that constitutes a credit bid shall be subject to section 363(k) of the Bankruptcy Code. These Bid Procedures are subject to the terms and provisions of the DIP Orders.

In the event that the Agent or any Lender (or such designee) submits a Bid and is still participating in the Auction process, the Agent or such Lender (or such designee) shall no longer be considered a Consultation Party with respect to the assets for which it has submitted a Bid; provided, that if any such party indicates in writing that it is no longer a bidder for such assets, such party shall thereafter be considered a Consultation Party.

**"As Is, Where Is"**

Any sale or transfer of the Acquired Assets will be on an "as is, where is" basis and without representations or warranties of any kind by the Debtors and their agents, except and solely to the extent expressly set forth in a final purchase agreement. Each Qualified Bidder will be required to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtors' assets that are the subject of the Auction prior to making its Bid and that it has relied solely upon its own independent review and investigation in making its Bid.

**Auction**

**Auction**. If the Debtors receive two or more Qualified Bids (including the Stalking Horse Bid), the Debtors may hold an Auction; *provided* that the Debtors in their discretion and with the prior written consent of the Consultation Parties may elect to forego an Auction and select a Qualified Bid as the Successful Bid.

If no Qualified Bids (other than the Stalking Horse Bid) are received by the Bid Deadline, then the Auction shall be cancelled, the Stalking Horse Bidder will be deemed the Successful Bidder, the Stalking Horse Agreement will be the Successful Bid, and, at the Sale Hearing, the Debtors will seek final Court approval of the sale of the Acquired Assets to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse Agreement.

**Auction Date and Location**. If an Auction is held, it will commence on or before May 15, 2025 at 10:00 a.m. (Prevailing Eastern Time) at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 N Market Street, 16th Floor, Delaware, Wilmington 19801, telephonically or by video via Zoom, or such later time or other place, in consultation with the Consultation Parties.

**Partial Bids.** If any of the Qualified Bids submitted by the Bid Deadline are structured as a purchase of less than all or substantially all of the Debtors' assets (each such bid, a "Partial Bid"), the Debtors may conduct separate auctions at the Auction for each lot of assets (each, an "Auction Lot") subject to a Partial Bid. Any Partial Bid must meet all of the requirements of a Qualified Bid, unless otherwise modified herein, including without limitation, the Good Faith Deposit. The Debtors may also combine multiple Partial Bids into an Auction Lot to compete against Qualified Bids for all of the Debtors' assets.

**Baseline Bid**. No later than one (1) day prior to the commencement of the Auction, the Debtors will provide all Notice Parties and Consultation Parties with complete copies of all Transaction Documents and all other bid materials submitted by each other Qualified Bidder, subject to exclusion of any confidential financial information as determined by the Debtors in their reasonable discretion or which has been so designated by the applicable Qualified Bidder. At the commencement of the Auction, the Debtors will notify all Qualified Bidders, Notice Parties and Consultation Parties of the highest acceptable Qualified Bid, as determined by the Debtors in their

7

reasonable discretion after consultation with the Consultation Parties (the "Baseline Bid"). The Debtors' determination of which Qualified Bid constitutes the Baseline Bid, in consultation with the Consultation Parties, shall take into account factors such as the projected percentage recovery to general unsecured creditors pursuant to such Qualified Bid and the certainty of such recovery, whether all administrative, priority and secured claims will be paid in full under such Qualified Bid, and any other factors the Debtors, in consultation with the Consultation Parties, reasonably deem relevant to the value of the Qualified Bid to the estates. No later than the day prior to the commencement of the Auction, each Qualified Bidder that has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction; *provided* that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid will nevertheless remain fully enforceable against such Qualified Bidder.

**Participation Requirements**. Only a Qualified Bidder that has submitted a Qualified Bid will be eligible to participate at the Auction. The authorized representatives of each of the Qualified Bidders (including the Stalking Horse Bidder), the Debtors, the Agent, and the Committee will be permitted to attend the Auction. In addition, pursuant to Local Rule 6004-1, all creditors of the Debtors who have not submitted Bids may attend the Auction as observers, *provided* that they send an email to Debtors' counsel indicating that they intend to attend the Auction no less than one (1) Business Day prior to the Auction, *provided further* that the Debtors' right to object on an emergency basis to any such creditor's proposed attendance at the Auction is reserved.

**Auction Procedures**. The Debtors and their professionals will direct and preside over the Auction. At the start of the Auction, the Debtors will describe the terms of the Baseline Bid. All Bids made thereafter must be Overbids (as defined below) and will be made and received on an open or closed basis, as determined by Debtors in consultation with the Consultation Parties, and all material terms of each Bid will be fully disclosed to all other Qualified Bidders. The Debtors will maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids, the Successful Bid and the Back-Up Bid. Each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the sale of the Acquired Assets. The Debtors, in their reasonable discretion, after consultation with the Consultation Parties, reserve the right to conduct the Auction in a manner designed to maximize value based upon the nature and extent of the Qualified Bids received. The Debtors and their professionals will consult in good faith with the Consultation Parties throughout the Auction process.

During the Auction, bidding will begin initially with the Baseline Bid and subsequently continue in minimum increments of at least $500,000 (each, an "Overbid"). The Debtors will announce at the Auction the material terms of each Overbid, value each Overbid in accordance with these Bid Procedures and provide each Qualified Bidder with an opportunity to make a subsequent Overbid (except in the event of a round of closed, final bidding). Additional consideration in excess of the amount set forth in the Baseline Bid may include cash and/or other consideration acceptable to the Debtors in accordance with these Bid Procedures; *provided*, however, that no portion of the consideration may include non-cash consideration without the prior written consent of Agents (acting at the direction of the requisite Lenders pursuant to the Prepetition Credit Agreement and Postpetition Credit Agreement (each as defined in the DIP

Orders) and Committee. When bidding at the Auction, the Stalking Horse Bidder will receive a cash credit in the amount of the Bid Protections and will be allowed to bid the Bid Protections.

To the extent that an Overbid has been accepted entirely or in part because of the addition, deletion, or modification of a provision or provisions in the applicable Transaction Documents or the Stalking Horse Agreement, the Debtors, after consultation with the Consultation Parties, will provide notice to each participant of the value ascribed by the Debtors to any such added, deleted, or modified provision or provisions, with such value being determined by the Debtors in their reasonable discretion, after consultation with the Consultation Parties.

Any Overbid made from time to time by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless (i) the Debtors accept a higher and otherwise better bid submitted by another Qualified Bidder during the Auction as an Overbid and (ii) such Overbid is not selected as the Back-Up Bid (as defined below). To the extent not previously provided (which will be determined by the Debtors), a Qualified Bidder submitting an Overbid must submit at the Debtors' request, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors (in consultation with the Consultation Parties)) demonstrating such Qualified Bidder's ability to close the transaction at the purchase price contemplated by such Overbid.

## Selection of Successful Bid

At the conclusion of the Auction, the Debtors, in the exercise of their reasonable business judgment, in consultation with the Consultation Parties, will select (i) the highest acceptable Bid (the "Successful Bid") or collection of Bids (the "Successful Bids") submitted by a Qualified Bidder during the Auction that the Debtors believe is most beneficial to the Debtors and their estates, and (ii) at the Debtors' discretion, the next highest acceptable Bid (the "Back-Up Bid") or collection of Bids (the "Back-Up Bids") after the Successful Bid(s). In selecting the Successful Bid(s) and the Back-Up Bid(s), if any, the Debtors, in consultation with the Consultation Parties, shall take into account the projected percentage recovery to general unsecured creditors and the certainty of such recovery and whether all administrative, priority and secured claims will be paid in full and may also consider, among other things: (i) the number, type and nature of any changes to the Stalking Horse Agreement which may delay closing of the contemplated transaction and the cost to the Debtors of such modifications or delay; (ii) the liabilities being assumed; (iii) the likelihood of the Qualified Bidder's ability to close its proposed transaction and the timing thereof; (iv) the expected net benefit of the transaction to the Debtors' estates; and (v) any other factors the Debtors may reasonably deem relevant. The Qualified Bidder that submits a Successful Bid will be deemed a "Successful Bidder," and the Qualified Bidder that submits a Back-Up Bid, if any, will be deemed a "Back-Up Bidder." The Successful Bidder(s) and Back-Up Bidder(s), following the completion of the Auction, must increase their Good Faith Deposits so that they equal 10% of such Successful Bid or Back-Up Bid, as applicable.

The Auction will close when the Debtors announce that a Successful Bid(s) and, to the extent the Debtors determine, in consultation with the Consultation Parties, a Back-Up Bid(s), have been selected. Notwithstanding anything herein to the contrary, the Debtors are authorized, but not required, to select a Back-Up Bidder and a Back-Up Bid. For the avoidance of doubt, the

Debtors will not consider or support any Bid for any of the Acquired Assets (whether or not such bid is made by a Qualified Bidder) received after the close of the Auction.

The Back-Up Bid(s), if any, will remain open and binding on the Back-Up Bidder(s) until consummation of the Successful Bid(s) with the Successful Bidder(s). If a Successful Bidder fails to consummate a Successful Bid within the time set forth therein, the Debtors will be authorized, but not required, to select a Back-Up Bidder, if any, as the new Successful Bidder, and shall proceed to consummate the Successful Bid of the new Successful Bidder.

## Implementation of the Sale

The hearing to authorize the sale of the Acquired Assets to the Successful Bidder(s) pursuant to the Successful Bid(s) (the "Sale Hearing") will be held before the Court on May 22, 2025, at 10:00 a.m. (Prevailing Eastern Time). The Sale Hearing may be adjourned or rescheduled by the Debtors, in consultation with the Consultation Parties, to a time and date consistent with the Court's calendar, as set forth in notice on the docket of the Cases, a notice of agenda or stated orally on the record at a hearing before the Court. Upon the Court's approval of the Successful Bid(s), the Successful Bid(s) will be deemed accepted by the Debtors, and the Debtors will be bound to the terms of that Successful Bid(s) with no further opportunity for an auction or other process.

If a Successful Bidder or a Back-Up Bidder (if a Successful Bidder fails to consummate the proposed transaction) fails to enter into their respective asset purchase agreement as promptly as practicable or consummate the proposed transaction consistent with the Successful Bid or Back-Up Bid (if applicable), because of a breach or failure to perform on the part of the Successful Bidder or Back-Up Bidder (if applicable), all parties in interest reserve the right to seek all available damages from the defaulting Successful Bidder or Back-Up Bidder (if applicable), including specific performance and retention of the Good Faith Deposit.

## Consent to Jurisdiction as Condition to Bidding

All Qualified Bidders irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the Bankruptcy Court for any litigation arising out of or relating to the Auction (and agrees not to commence any litigation relating thereto except in the Bankruptcy Court), and waives any objection to the laying of venue of any such litigation in the Bankruptcy Court. To the extent the Bankruptcy Court declines, or is otherwise unable to, exercise jurisdiction, then the Qualified Bidders agree that the state or federal courts in the County of New Castle, State of Delaware, shall have jurisdiction.

## Return of Good Faith Deposit

All Good Faith Deposits will be held by the Debtors in a non-interest-bearing escrow or trust account. Good Faith Deposits of Qualified Bidders, other than a Successful Bidder and a Back-Up Bidder, if any, will be returned to the unsuccessful bidders within five (5) days after selection of a Successful Bidder and Back-Up Bidder, if any, in accordance with these Bid Procedures. A Successful Bidder's Good Faith Deposit will be applied to the Purchase Price of their Successful Bid at closing, and the Debtors will be entitled to retain such Good Faith Deposit

as part of their damages if a Successful Bidder fails to meet their obligations to close the transaction contemplated by their Successful Bid. The Good Faith Deposit of a Back-Up Bidder, if any, will be returned to the Back-Up Bidder, if any, within five (5) days after the consummation of the sale with a relevant Successful Bidder.

## **Reservation of Rights**

The Debtors reserve the right, with the prior written consent of Agent acting at the direction of the Required Lenders (as defined in the Credit Agreement), in their reasonable discretion and subject to the exercise of their business judgment, to alter or modify any of the rules or procedures set forth herein, to waive terms and conditions set forth herein with respect to all potential bidders, extend the deadlines set forth herein, alter the assumptions set forth herein, and/or to terminate discussions with any and all prospective acquirers and investors at any time and without specifying the reasons therefor, in each case to the extent not materially inconsistent with the Bid Procedures Order or the Stalking Horse Agreement; *provided*, however, that the Debtors shall not waive the requirement to make a Good Faith Deposit.

Nothing herein or contemplated hereby constitutes, or will be deemed to constitute or otherwise result in, the consent or approval of Agent or any Lender to any sale of the Acquired Assets, any Bid, or to any agreement, motion, document or pleading relating thereto, or the waiver or modification of any of the terms of, or any rights under, any existing agreement, instrument or document, including, without limitation, any Loan Documents (as defined in the Credit Agreement) any Postpetition Documents (as defined in the DIP Orders, or any default arising thereunder or relating thereto. Any and all rights of such parties to object or otherwise oppose any sale of the Acquired Assets, any Sale Order, Bid, or any agreement or document related thereto are hereby expressly preserved and reserved.