## <u>Exhibit A</u>

**Revised Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| ROYAL INTERCO, LLC, *et al.*, | Case No. 25-10674 (TMH) |
| Debtors.[1] | Jointly Administered |

## FINAL ORDER AUTHORIZING DEBTORS TO:  (A) USE CASH COLLATERAL; (B) INCUR POSTPETITION DEBT; AND (C) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO NXT CAPITAL, LLC, AS AGENT AND THE LENDERS

This matter came before this Court on the motion (the "Motion") of Royal Interco, LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors") requesting that this Court enter a final order authorizing the Debtors to:  (a) use certain Cash Collateral; (b) incur Postpetition Debt; and (c) grant adequate protection and provide security and other relief to NXT Capital, LLC ("NXT"), in its capacity as agent ("Prepetition Agent") for the lenders party to Prepetition Credit Agreement ("Prepetition Lenders"), and NXT in its capacity as agent ("Postpetition Agent"; together with its role as Prepetition Agent, "Agents") to the lenders party to the Postpetition Credit Agreement ("Postpetition Lenders"; together with Prepetition Lenders, the "Lenders").  Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: Royal Interco, LLC (7913); Doubletree Paper Mills, L.L.C. (1830); Royal Paper, LLC (9937); and Sun Paper Company, LLC (7899). The Debtors' mailing address is 711 North 17th Avenue, Phoenix, AZ 85007.

A.      On the Filing Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code.  Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

B.      The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. § 1334.  Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C.      On April 18, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee. *See* Dkt. No. 79.

D.      Subject to Paragraph 9 of this Order, Debtors admit, stipulate and agree that:

1.      the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among the Debtors, Prepetition Agent and Prepetition Lenders;

2.      the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents;

3.      as of the Filing Date, Debtors are liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed claim in an amount not less than $205,143,282.79, exclusive of accrued and accruing Allowable 506(b) Amounts, and is an allowed secured claim in an amount not less than $126,000,000;

4.      no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

5.      the Prepetition Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Debt;

6.      upon the entry of the Interim Order, for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, the value of the Prepetition Lenders' interest in the Prepetition Collateral was not less than $126,000,000, provided,

<u>however</u>, that nothing herein shall prejudice Prepetition Agent's and any Prepetition Lender's right to later: (1) assert that their respective interests in the Prepetition Collateral lack adequate protection; and (2) seek a higher valuation of the Prepetition Collateral;

7.      Debtors do not have, and hereby release, and are forever barred from bringing any claims, counterclaims, causes of action, defenses or setoff rights relating to the Prepetition Documents, the Prepetition Liens, or the Prepetition Debt, against the Prepetition Agent, the Prepetition Lenders, and solely in their capacity as such, their respective affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors and assigns.

E.      Prepetition Agent, acting at the direction of the requisite Prepetition Lenders, has consented to the terms of this Order and Prepetition Agent and Prepetition Lenders are entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362, 363 and 364 for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date.

F.      Debtors need to use Cash Collateral and incur Postpetition Debt as provided herein, in order to prevent immediate and irreparable harm to the estate and minimize disruption to and avoid the termination of their business operations. Entry of this Order will also enhance the possibility of maximizing the value of the Debtors' businesses.

G.      Debtors are unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the operations of their businesses. Except as provided below, Debtors are unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2) or (c)(3) on terms more favorable than those offered by Postpetition Agent and Postpetition Lenders.

H.      The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

I.      Under the circumstances of these Cases, the entry of the Interim Order was, and the entry of this Order is, in the best interest of Debtors' estates and is necessary to avoid immediate and irreparable harm and is consistent with the Debtors' business judgment.

J.      The Debtors represent that they have given notice of the Final Hearing in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), 9014, and all applicable Local Rules.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1.    <u>Authorization to Use Cash Collateral</u>.  Debtors were authorized, pursuant to the Interim Order, and are hereby authorized to use Cash Collateral solely in accordance with the terms and provisions of the Interim Order and this Order, to the extent required to pay when due those expenses enumerated in the Budget, and to pay Allowable 506(b) Amounts and the Postpetition Charges, and to fund the Carveout.

2.    <u>Procedure for Use of Cash Collateral</u>.

(a)    <u>Delivery of Cash Collateral to Postpetition Agent</u>.  Debtors shall deposit all Cash Collateral now or hereafter in their possession or control into Blocked Accounts (or otherwise deliver such Cash Collateral to Postpetition Agent in a manner satisfactory to Postpetition Agent) promptly upon receipt thereof.  Postpetition Agent, in its discretion, may authorize the Debtors to use Cash Collateral, in lieu of incurring additional Postpetition Debt, to fund Budget expenses subject to the terms and conditions of this Order.

(b)    <u>Cash Collateral in Agents' or Lenders' Possession</u>.  Postpetition Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its or any Lender's possession or control which constitute Aggregate Collateral or proceeds thereof.

(c)    <u>Application of Cash Collateral</u>.  Except as Agents may otherwise elect in their discretion, subject to the Carveout, Agents are authorized to apply all Cash Collateral now or hereafter in any Agent's or any Lender's possession or control as follows: (1) first, to payment of Postpetition Debt consisting of Postpetition Charges; (2) second, to payment of other Postpetition Debt in accordance with the Postpetition Credit Agreement; (3) third, to the payment of Prepetition Debt consisting of Allowable 506(b) Amounts; and (4) fourth, to the payment of all other Prepetition Debt in accordance with the Prepetition Documents.  All such applications to Postpetition Debt shall be final and not subject to challenge by any person, including any Trustee. All such applications to Prepetition Debt are subject to Paragraph 9 below.  Any amounts disgorged in connection with any such objection or determination shall be first applied to reduce the Postpetition Debt, dollar-for-dollar.

(d)      <u>Prohibition Against Use of Cash Collateral</u>.    Unless otherwise consented to by Agents in writing, except as provided for in this Order, Debtors shall not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363, such Cash Collateral is used to pay those expenses enumerated in the Budget, including the Carveout, as and when such expenses become due and payable, subject to the Permitted Variance.

3.      <u>Authorization To Incur Postpetition Debt</u>.

(a)      <u>Postpetition Documents</u>.    Debtors were authorized pursuant to the Interim Order and are hereby authorized and have agreed to: (1) execute the Postpetition Documents, including all documents that Postpetition Agent and Postpetition Lenders find reasonably necessary to implement the transactions contemplated by the Postpetition Documents; and (2) perform their obligations under and comply with all of the terms and provisions of the Postpetition Documents, the Interim Order, and this Order.  Upon execution and delivery thereof, the Postpetition Documents constituted valid and binding obligations of Debtors enforceable in accordance with their terms.   No obligation, payment, transfer or grant of security under the Postpetition Documents, the Interim Order, or this Order shall be restrained, voidable or recoverable under the Code or any other applicable law (including, without limitation, under Code § 502(d)) or subject to any defense, reduction, setoff, recoupment or counterclaim.  To the extent there exists any conflict among the terms of the Motion, the Postpetition Documents, and this Order, this Order shall govern and control; <u>provided</u>, <u>however</u>, nothing in this Order shall modify or otherwise affect the validity of any Postpetition Debt incurred in accordance with the Interim Order, or any priority or lien so granted under the Interim Order.

(b)      <u>Permitted Uses of Postpetition Debt</u>.   From and after the entry of this Order, Debtors are authorized and have agreed to incur Postpetition Debt solely:  (1) in accordance with the terms and provisions of this Order and the Postpetition Documents, (2) to the extent required to pay those expenses enumerated in the Budget, as and when such expenses become due and payable, subject to the Permitted Variance, (c) to pay Allowable 506(b) Amounts and the Postpetition Charges, and (d) to fund the Carveout.

(c)     Additional Terms of Postpetition Debt.

(i)     DIP Commitment.  The DIP Commitment shall be an amount equal to $10,000,000, of which $5,000,000 was immediately available upon entry of the Interim Order to be drawn during the period commencing on the entry of the Interim Order and until entry of this Order in accordance with the terms and conditions set forth in the Postpetition Credit Agreement.

(ii)     Interest.  The Postpetition Debt shall bear interest at a per annum rate equal to 7.50% plus the Base Rate, in the case of Base Rate Loans, and 8.50% plus the Adjusted Term SOFR Rate, in the case of Term SOFR Loans (as such terms are defined in the Postpetition Credit Agreement) (exclusive of any default rate interest that may be imposed under the Postpetition Credit Agreement).   On the applicable interest payment date, interest shall be paid-in-kind and added to the outstanding principal balance of the Postpetition Debt.

(iii)     Closing Fee.  Debtors shall pay to Postpetition Agent, for the benefit of Postpetition Lenders, a closing fee (the "Closing Fee") in an amount equal to 3% of the DIP Commitment, which Closing Fee shall be fully earned, due and payable on the closing date of the Postpetition Credit Agreement and shall be paid in kind and added to the outstanding principal balance of Postpetition Debt.

(iv)     Exit Fee.  Debtors shall pay to Postpetition Agent, for the benefit of Postpetition Lenders, an exit fee (the "Exit Fee") in an amount equal to 5% of the DIP Commitment, which Exit Fee shall be fully earned, due and payable immediately upon the earliest to occur of (i) the Termination Date, (ii) the date on which the Postpetition Debt is Paid in Full, or (iii) the acceleration of all of Postpetition Debt.

(v)     Maturity.  The Postpetition Debt shall mature and be due and payable in full by Debtors on the earliest of (i) the date that is 90 days after the Filing Date (which may be extended by up to 30 days thereafter with the consent of the Required Lenders), (ii) the consummation of a sale of all or substantially all of the Debtors' assets, (iii) the effective date of a plan of reorganization and (iv) the date that is 24 days after the Filing Date (or such later date as Postpetition Agent may agree up to the date that is 30 days after the Filing Date) unless the Bankruptcy Court shall have entered this Order, in form and substance satisfactory to Postpetition Agent (such earliest date, the "Maturity Date").

(vi)     Guarantors.  Each Guaranty and all related security documents shall remain in full force and effect notwithstanding the entry of the Interim Order and this Order and any subsequent orders amending the Interim Order or this Order or otherwise providing for the use of Cash Collateral consented to by Agents and Lenders pursuant to Code § 363 or

additional financing by Postpetition Agent and Postpetition Lenders pursuant to Code § 364. Each Guarantor is and shall remain liable for the guaranteed obligations under each such Guaranty, including, without limitation, all Postpetition Debt, and any refinancing thereof.

(vii) <u>Prepetition Documents</u>. Subject to a potential Challenge in accordance with Paragraph 9 of this Order, each Prepetition Third Party Document, and other Prepetition Document will remain in full force and effect notwithstanding the entry of the Interim Order and this Order and any subsequent orders amending the Interim Order or this Order or otherwise providing for the use of any Cash Collateral consented to by Agents and Lenders pursuant to Bankruptcy Code § 363 or additional financing by Agents and Lenders pursuant to Bankruptcy Code § 364. Each "Borrower" and "Guarantor" (as each such term is defined in the Prepetition Agreement) is and will remain liable for all guaranteed obligations and indebtedness under the Prepetition Documents.

(viii) <u>Joint and Several Liability of Loan Parties</u>. The obligations of each "Borrower" and each "Guarantor" (as each such term is defined in the Postpetition Agreement) under the Interim Order and this Order are joint and several.

(ix) <u>Control Agreements</u>. All deposit account control agreements in effect as of the Filing Date remain in full force and effect notwithstanding the entry of the Interim Order and this Order and any subsequent orders amending the Interim Order or this Order.

(d) <u>Superpriority Administrative Expense Status; Postpetition Liens</u>. The Postpetition Debt was granted pursuant to the Interim Order and is hereby granted superpriority administrative expense status under Code § 364(c)(1), with the priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b), subject to the Carveout. In addition, Postpetition Agent was granted pursuant to the Interim Order and is hereby granted the Postpetition Liens, for the benefit of Postpetition Lenders to secure the Postpetition Debt. The Postpetition Liens: (1) are in addition to the Prepetition Liens; (2) pursuant to Code §§ 364(c)(2), (c)(3) and 364(d), are Priority Liens (subject only to Permitted Priority Liens) without any further action by Debtors or Postpetition Agent and without the execution, delivery, filing or recordation of any financing statements, security agreements, control agreements, title notations, mortgages, deeds of trust or other documents or instruments; (3) shall not be subject to any security interest or lien which is avoided and preserved under Code § 551; (4) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases; and (5) shall not be subject to Code § 510(c); and (6) upon approval of this Order, shall not be subject to any landlord's

lien, banker's lien, bailee's rights, carrier's lien, right of distraint or levy, security interest, right of setoff, or any other lien, right or interest that any bailee, warehouseman, bank, processor, shipper, carrier, or landlord may have in any or all of the Aggregate Collateral.  Notwithstanding the foregoing, Debtors shall execute and deliver to Postpetition Agent such financing statements, security agreements, control agreements, title notations, mortgages, deeds of trust, instruments and other documents and instruments as DIP Agent may request from time to time, and any such documents filed by Postpetition Agent shall be deemed filed as of the Filing Date.  Further, Prepetition Agent shall serve as agent for Postpetition Agent for purposes of perfecting Postpetition Agent's security interest in any Postpetition Collateral that requires perfection by possession or control, and all Prepetition Third Party Documents were deemed pursuant to the Interim Order and are hereby deemed to be for the benefit of Postpetition Agent and Postpetition Lenders without further action by any party.  Without limiting the foregoing, Postpetition Agent, for itself and the Postpetition Lenders, has pursuant to the Interim Order, and will be deemed to have, a perfected Postpetition Lien on all existing deposit accounts of each Debtor and any new deposit account that any Debtor may establish on or after the date hereof without any further action by Debtors or Postpetition Agent.  A copy of this Order (or a notice of this Order in recordable form) may be used by Postpetition Agent as a financing statement, mortgage, deed of trust or similar instrument for purposes of any public filing made by Postpetition Agent for evidence of the perfection of the Postpetition Liens and the filing of this Order (or a notice of this Order in recordable form) shall have the same effect as if such instrument had been filed or recorded at the time and on the Filing Date. All state, federal, and county recording officers are authorized to accept a copy of this Order (or a notice of this Order in recordable form) for filing for such purposes

(e)    Prohibition Against Additional Debt.  Debtors will not incur or seek to incur debt secured by a lien which is equal to or superior to the Prepetition Liens or the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364, Agents have consented to such order.

4.    Adequate Protection of Interests of Prepetition Agent and Prepetition Lenders in the Prepetition Collateral and the Prepetition Liens.  Subject to the Carveout and the terms of Paragraph 9 of this Order, Prepetition Agent, acting at the instruction of the requisite Prepetition Lenders, has consented to the terms of the Interim Order and this Order and Prepetition

Agent and Prepetition Lenders are entitled to adequate protection as set forth in the Interim Order and this Order and to the extent required under Code §§ 361, 362, 363 or 364 (including for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date).

(a)     <u>Priority of Prepetition Liens/Allowance of Prepetition Lenders' Claim</u>.  Subject to the terms of Paragraph 9 of this Order: (1) the Prepetition Liens shall constitute Priority Liens, subject only to the Postpetition Liens and the Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law; and (4) Prepetition Agent's and Prepetition Lenders' claim with respect to the Prepetition Debt shall for all purposes constitute an allowed claim within the meaning of Code § 506 in an amount not less than $205,143,282.79, exclusive of accrued and accruing Allowable 506(b) Amounts.

(b)     <u>Replacement Liens</u>.  Subject to the terms of Paragraph 9 of this Order, Prepetition Agent was granted pursuant to the Interim Order and is hereby granted the Replacement Liens, for the benefit of Prepetition Lenders, as security for payment of the Prepetition Debt.  The Replacement Liens granted pursuant to the Interim Order and this Order: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtors or Prepetition Agent and without the execution, filing, or recordation of any financing statement, security agreement, control agreement, mortgage, deed of trust, title notation, or other document or instrument; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases.  Notwithstanding the foregoing, Debtors were authorized and required pursuant to the Interim Order and are hereby authorized to and shall execute and deliver to Prepetition Agent such financing statements, security agreements, control agreements, mortgages, deeds of trust, title notations and other documents and instruments as Prepetition Agent may request from time to time in respect of the Replacement Liens and any such documents filed by Prepetition Agent shall be deemed filed as of the Filing Date.  A copy of this Order (or a notice of this Order in recordable form) may be used by Prepetition Agent as a financing statement, mortgage, deed of trust or similar instrument for purposes of any public filing made by Prepetition Agent for evidence of the perfection of the Prepetition Liens and the filing of this Order (or a notice of this Order in

recordable form) shall have the same effect as if such instrument had been filed or recorded at the time and on the Filing Date. All state, federal, and county recording officers are authorized to accept a copy of this Order (or a notice of this Order in recordable form) for filing for such purposes.

        (c)     <u>Allowed Code § 507(b) Claim</u>.  Subject to the terms of Paragraph 9 of this Order, if and to the extent the adequate protection of the interests of Prepetition Agent and Prepetition Lenders in the Prepetition Collateral granted pursuant to the Interim Order and this Order proves insufficient, Prepetition Agent and Prepetition Lenders shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency.

        5.     <u>Reporting and Rights of Access and Information</u>. The Debtors shall timely comply with all reporting requirements set forth in the Prepetition Loan Agreement and the Postpetition Loan Agreement, as applicable.  The Debtors shall comply with the rights of access and information afforded to the Postpetition Agent and Postpetition Lenders under the Postpetition Documents and the Prepetition Agent and the Prepetition Lenders under the Prepetition Documents. The Debtors shall promptly provide to the Committee all reporting provided to the Postpetition Agent or the Postpetition Lenders under the Postpetition Documents.

        6.     <u>Termination Date; Rights and Remedies</u>.

        (a)     <u>Effect of Termination Date</u>.  Unless extended by the Court upon the written agreement of Postpetition Agent, upon the Termination Date without further notice or order of Court: (1) Debtors' authorization to use Cash Collateral and incur Postpetition Debt under the Interim Order and hereunder will automatically terminate; and (2) at Postpetition Agent's election: (i) the Postpetition Debt shall be immediately due and payable, (ii) Debtors shall be prohibited from using Cash Collateral for any purpose other than application to the Aggregate Debt in accordance with Paragraph 2(c) of this Order after funding the Carveout Reserve and (iii) Postpetition Agent shall be entitled to setoff any cash in any Lender's possession or control and apply such cash to the Aggregate Debt in accordance with Paragraph 2(c) of this Order.

        (b)     <u>Rights and Remedies</u>.  On the fifth (5th) business day after the Termination Date, at Postpetition Agent's election without further order of the Court, subject to the funding of the Carveout Reserve:  (1) Agents shall have automatic and immediate relief from

the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise all rights and remedies available to them under the Prepetition Documents, the Postpetition Documents and applicable nonbankruptcy law (including, with respect to any Aggregate Collateral consisting of Real Property, the right to appoint a receiver, the right to foreclose judicially or non-judicially, and other rights and remedies which, under applicable non-bankruptcy law, could be granted to a mortgagee or to a trustee or to a beneficiary pursuant to the terms of a Mortgage (as defined in the Prepetition Credit Agreement and Postpetition Credit Agreement)); and (2) Debtors shall surrender the Aggregate Collateral and otherwise cooperate with Agents and Lenders in the exercise of their rights and remedies under the Prepetition Documents, the Postpetition Documents and applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease or otherwise dispose of the Aggregate Collateral upon the request and subject to terms and conditions acceptable to Agents.  Notwithstanding the foregoing, during the five (5) business day period following the Termination Date (the "Remedies Notice Period"), any party-in-interest may object to the occurrence of the Termination Date on any basis; provided, however, that during such five (5) business day period, (x) Postpetition Lenders shall have no obligation to advance Postpetition Debt to Debtors and (y) Debtors shall be entitled to use Cash Collateral in accordance with the terms of this Order solely to make payroll and other critical expenses (as agreed to by Debtors and Agents) in accordance with the terms of the Budget.  Notwithstanding anything to the contrary contained in this Order, the Prepetition Documents or the Postpetition Documents, but subject to Paragraph 9 as to the Prepetition Agent, each Agent may send account debtor notifications to any account debtor of any of the Debtors at any time, whether or not an Event of Default or the Termination Date has occurred.  Notwithstanding anything to the contrary herein, if the Debtors or other parties in interest request an emergency hearing during the Remedies Notice Period, but such hearing is scheduled for a later date by the Court (not requested by the Debtors or other parties in interest), then the Remedies Notice Period shall be automatically extended to the date of such hearing.

        (c)     Access to Collateral. Upon approval of this Order, notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtors' leased premises that an Event of Default has occurred and is continuing, Postpetition Agent may enter upon such leased premises for the purpose of exercising any right or remedy with respect to the

Aggregate Collateral located thereon and shall be entitled to the Debtors' rights and privileges under such lease(s) without interference from such landlord; provided that Postpetition Agent shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by Postpetition Agent, calculated on a per diem basis. Notwithstanding anything to the contrary, with respect to the TREA Lease (as defined below) the Postpetition Agent (on behalf of the Postpetition Lenders) may only enter upon the premises leased under the TREA Lease following an Event of Default in accordance with and pursuant to the terms of (i) a separate written agreement among the Postpetition Agent (on behalf of the Postpetition Lenders) and TREA (as defined below) for the leased premises, (ii) pre-existing rights of the Postpetition Agent (on behalf of the Postpetition Lenders) under applicable non-bankruptcy law, (iii) written consent of TREA, or (iv) entry of an order by this Court approving such access to the leased premises after notice to, and an opportunity to be heard from, TREA.

7.     <u>Carveout</u>.

(a)     <u>Carveout Terms</u>.   The Carveout with respect to each Carveout Professional: (1) shall equal an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date and (ii) to the extent allowed at any time, whether by interim order, final order or other order, the aggregate amount of fees and expenses that accrue during the period commencing on the Filing Date and ending on the Termination Date (excluding any restructuring, sale, success, or other transaction fee) and (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional and any retainer or advance held by such Carveout Professional. Further, Postpetition Agent shall have the right to reserve against the DIP Commitment an amount equal to the sum of the aggregate amount of unpaid fees and expenses set forth in the Budget for the Carveout Professionals Upon the Termination Date, and notwithstanding anything herein to the contrary, Postpetition Lenders shall provide Postpetition Debt to the Debtors in an amount equal to (i) the lesser of (a) the aggregate amount of allowed fees and expenses for each Carveout Professional that accrue after the Termination Date and (b) an amount equal to $200,000 and (ii) all reasonable Court-allowed fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code, into a segregated account established for the sole purposes of maintaining amounts to repay the Carveout (the "<u>Carveout Reserve</u>"), which Postpetition Debt shall be used by the Debtors for the sole purpose of

funding the Carveout Professionals and the trustee subject to the above provision after the Termination Date.  Except as set forth in the preceding sentence, Postpetition Lenders shall have no obligation to fund any fees or expenses of Carveout Professionals accrued on, prior to, or after the Termination Date.  Prior to the Termination Date, the Debtors shall fund on a weekly basis the Carveout Reserve in an aggregate amount equal to the aggregate amount provided in the Budget for such professionals for such week, which shall be earmarked and held in trust to pay unpaid fees and expenses incurred by estate professionals, subject to allowance of such fees by the Court at any time, prior to any and all other claims in the chapter 11 cases, which funds shall be used to pay the obligations of estate professionals as set forth in the Budget. The Postpetition Agent's interest in the Carveout Reserve is limited to the Debtors' residual interest therein after all allowed amounts in respect of the Carveout have been satisfied in full.

(b)     Carveout Usage.  No portion of the Carveout and no Postpetition Debt or Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including the Debtors, any Committee or the Carveout Professionals, in connection with claims or causes of action adverse to Agents' or Lenders' interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Agents' or Lenders' enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Agents' and Lenders' consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Aggregate Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Agents and Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Agents or Lenders; provided, however, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $50,000, incurred by the Committee's professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 9 of this Order; provided, further, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation and entry of the Interim Order, this Order or any amendment hereto consented to by Postpetition Agent.  All Carveout Professionals shall have all professional fees paid from the applicable Carveout Reserve prior to seeking payment from any other Aggregate Collateral.  After payment in full of the Carveout for allowed professional fees of

Carveout Professionals, all remaining funds in the Carveout Reserve shall be returned to the Agents on behalf of the Lenders.

(c)    Carveout Procedure.    The Debtors shall periodically, upon the request of the Postpetition Agent, provide to the Postpetition Agent a written report (the "Carveout Report"), in which the Debtors disclose their then current estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and (2) projected fees, costs and expenses of the Carveout Professionals for the 30 day period following the date of such Carveout Report. Nothing herein shall be construed as consent by Agents and Lenders to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Agents or any Lender to object to the allowance and payment of such fees, costs or expenses, or the right of Agents or any Lender to the return of any portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis. For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

8.    No Surcharge.    In the exercise of their business judgment, subject to entry of this Order, Debtors (or any Trustee) agree that there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Agents and Lenders. Further, Debtors represent that the Budget contains all expenses that are reasonable and necessary for the operation of their businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to Agents and Lenders under Code § 506(c). Therefore, effective upon entry of this Order, the Debtors (or any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment, or the "equities of the case" exception under Code § 552(b)) as they may relate to or be asserted against the Agents, the Lenders or the Aggregate Collateral. In reliance on the foregoing, Agents and Lenders have agreed to the entry of this Order.

9.    Reservation of Rights; Bar of Challenges and Claims.    The stipulations, waivers, releases and representations contained in the Interim Order and this Order, including,

without limitation, in Paragraph D, shall be binding on all Challenge Parties, unless and solely to the extent that (i) the Debtors receive notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a)     <u>Challenge Procedure</u>.  During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists.  If a Challenge Party identifies a basis to assert a Challenge, it must notify Debtors during the Investigation Period of its demand that Debtors initiate an action or adversary proceeding relating thereto and from the date that Debtors are so notified, Debtors shall have five (5) days to notify the Challenge Party of whether the Debtors intend to initiate such action and ten (10) days to initiate such action.  If the Debtors notify such Challenge Party that the Debtors do not intend to initiate an action or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to initiate an action or adversary proceeding, provided that if the Chapter 11 Cases are converted to chapter 7 or a chapter 7 or chapter 11 trustee is appointed or elected prior to the expiration of the Investigation Period, any such estate representative or trustee shall receive the full benefit of any remaining time before expiration of the Investigation Period, which, solely if not yet expired, shall be extended for a period of fourteen (14) days. Notwithstanding any other provision in the interim order, the Court retains the right to enter any appropriate remedy.  Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court. Notwithstanding anything to the contrary in this Order, if timely notified of a potential Challenge, Debtors shall retain authority to initiate, prosecute, settle or compromise a Challenge in the exercise of their business judgment and subject to any applicable further order of court.

(b)     <u>Bar of Challenges and Claims</u>.  If Debtors do not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by Prepetition Agent and Prepetition Lenders, solely with respect to a potential Challenge against such party, or for cause shown by an order of this Court), without further order of the Court, (1) the claims, liens and security interests of the Prepetition Agent and the Prepetition Lenders shall be deemed to be allowed for all purposes in these Cases and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (2) Debtors and their estates shall be deemed to have waived, released and discharged Prepetition Agent, Prepetition Lenders, and solely in their capacity as such, their respective officers, directors, principals, attorneys,

-15-

consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, or the Prepetition Documents.

(c)     Notwithstanding anything to the contrary herein, all of the Debtors' rights and remedies (whether at law or in equity) in connection with any potential claim or cause of action against any party holding an economic interest in any Term B Loan Obligations (as defined in the Prepetition Credit Agreement) which are, or may be, subject to investigation in accordance with this paragraph 9 are preserved (and nothing shall impair any of the Debtors' rights or remedies against such parties) until the termination of the Investigation Period under subclause (x) of the definition thereof.

10.     <u>Sale Milestones</u>. To effectuate the sale process for all, or substantially all, of the assets of the Debtors, the Debtors have agreed to, and were authorized by the Interim Order and are hereby authorized to, timely satisfy each of the sale milestones set forth and defined in Section 6.12 (and corresponding Schedule 6.12) of the Postpetition Credit Agreement. Debtors, Postpetition Agent, and requisite Postpetition Lenders may agree to amend or otherwise modify (but not shorten) such sale milestones from time to time, in writing, without the need of any further notice, hearing, or order of this Court (other than a notice of such amendment or modification to be filed with this Court).

11.     <u>Right to Credit Bid</u>.  In connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise, pursuant to Code § 363(k) and subject to Paragraph 9 of this Order, (a) Postpetition Agent, at the direction of the "Required Lenders" (as defined in the Postpetition Credit Agreement), subject to Paragraph 9 of this Order, shall have the right to use the Postpetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral, and (b) Prepetition Agent, at the direction of the "Required Lenders" (as defined in the Prepetition Credit Agreement), shall have the right to use the Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.  With respect to any such sale or other disposition of all or any portion of the Aggregate Collateral, and any auction and sale process relating thereto, subject to Code § 363(k) and subject

to Paragraph 9 of this Order, each Agent (and its respective designees) is, and will be deemed to be, a qualified bidder for all purposes under any sale and bidding procedures, and any order approving any bidding and sale procedures, and may attend and participate at any auction and any sale hearing, in each case, without regard to any of the requirements or conditions set forth therein and without any other or further action by such Agent or designee.

12.    <u>Plan</u>.  Subject to entry of this Order, unless Agents and "Required Lenders" (as defined in the Prepetition Credit Agreement and the Postpetition Credit Agreement) consent thereto, Debtors shall not seek entry of an order confirming a plan in these Cases unless the Aggregate Debt shall be Paid in Full on the earlier of (a) the effective date thereof, and (b) the Termination Date.

13.    <u>Application of Sale Proceeds</u>.  Subject to entry of this Order, all proceeds from sales or other dispositions of all or any portion of the Aggregate Collateral other than in the ordinary course shall be remitted to Agents for application in accordance with Paragraph 2(c) of this Order; provided, however, that Agents and Lenders agree to consent to the use of such sale proceeds in order to enable the Debtors to pay all accrued and unpaid Budget expenses first incurred after the Filing Date and until the Termination Date and not to exceed the amounts for such expenses as set forth in the Budget (as the same may be amended from time to time); provided further, that any allowed 503(b)(9) claims will not be included in the foregoing proviso and the treatment of such allowable 503(b)(9) claims will otherwise be addressed in connection with such sale order, by assumption by the proposed purchaser, by settlement (as the same may be reduced by operation of 502(d)), or by further order of this Court. To the extent the Carveout Reserves have not been funded in the aggregate amount of the Carveouts, the first proceeds of such sale shall be used to fully fund the Carveout Reserves prior to any application of such proceeds to the Aggregate Debt, and the remainder of the sale proceeds shall be applied by the Agents as set forth in Paragraph 2(c) of this Order until the Aggregate Debt has been Paid in Full.

14.    <u>Waiver of Right to Return/Consent to Setoff</u>.  Subject to entry of this Order, Debtors hereby waive their rights:  (a) to return any of the Aggregate Collateral pursuant to Code § 546(h); (b) to consent to any order permitting any claims pursuant to Code § 503(b)(9); and (c) to consent to setoff pursuant to Code § 553.

15. <u>Indemnification</u>. Subject to entry of this Order with respect to the Prepetition Agent and the Prepetition Lenders, Debtors shall indemnify and hold harmless Agents and Lenders and such other third parties as set forth in and in accordance with the Postpetition Credit Agreement and the Prepetition Credit Agreement.

16. <u>No Marshaling</u>. Subject to entry of this Order, no Agent, Lender or any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

17. <u>Postpetition Charges</u>. All Postpetition Charges must be promptly paid by Debtors in accordance with the Interim Order, this Order and the Postpetition Documents, without need for filing any application with the Court for approval or payment thereof, within ten (10) business days of Postpetition Agent's written notice to Debtors, any Committee, and the United States Trustee. Prior to any conversion of the Cases to chapter 7, any Postpetition Agent and Postpetition Lenders professional fees and expenses shall be paid by the Debtors within ten (10) days after delivery of an invoice in summary form (which shall not be required to include time entry detail and may be redacted for privileged information, but shall include (i) a general description of the nature of the matters for which services were performed and (ii) contain sufficiently detailed information to permit counsel to the Debtors, the U.S. Trustee, and any Committee to determine whether the fees and expenses sought to be paid are reasonable) provided, however, that the Debtors, the U.S. Trustee and any Committee reserve their rights to request additional detail regarding the services rendered and expenses incurred by such professionals) to the Debtors and without the need for application to or order of this Court. A copy of such summary invoices of the Postpetition Agent and the Postpetition Lenders shall be provided by the Postpetition Agent to the U.S. Trustee and counsel to the Committee, if one is appointed, contemporaneously with the Debtors' receipt of such summary invoice. Notwithstanding the foregoing, if (x) the Debtors, U.S. Trustee, or the Committee object to the reasonableness of a summary invoice submitted by the Postpetition Agent and (y) the parties cannot resolve such objection, in each case within the ten (10)-day period following receipt of such summary invoice, the Debtors, the U.S. Trustee or the Committee, as the case may be, shall file with this Court and serve on the Postpetition Agent a fee objection (a "<u>Postpetition Agent Fee Objection</u>"), which objection shall be limited to the issue of the reasonableness of such Postpetition Agent or such Postpetition Lender professional fees. The Debtors shall promptly pay any submitted invoice after the expiration of the ten (10)-day period if no Postpetition Agent Fee Objection is filed with this

Court and served on the Postpetition Agent in such ten (10)-day period. If a Postpetition Agent Fee Objection is timely filed and served, the Debtors shall promptly pay the undisputed amount of the summary invoices, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the Postpetition Agent Fee Objection.

18.     Force and Effect of Prepetition Documents.  Except as modified herein and subject to the other provisions of the Interim Order and this Order and the Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt.  To the extent there exists any conflict among the terms of the Motion, the Prepetition Documents and this Order, this Order shall govern and control.

19.     Conditions Precedent.  Except as provided for in the Carveout, neither Postpetition Agent nor any Postpetition Lender shall have any obligation to make any loans pursuant to the Postpetition Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable Postpetition Documents have been satisfied in full or waived in accordance with such Postpetition Documents.

20.     Modification of Stay.  The automatic stay of Code § 362 is hereby modified with respect to Agents and Lenders to the extent necessary to effectuate the provisions of the Interim Order and this Order, including, after the Termination Date, to permit Agents and Lenders to exercise their respective rights contemplated by Paragraph 5 above.

21.     Certain Leased Property. Notwithstanding anything to the contrary in this Order, and for the avoidance of doubt, none of the Prepetition Collateral and Postpetition Collateral shall include the lease or leasehold interest of TREA Riverside 202 Industrial LLC ("TREA") regarding certain real property commonly known and referred to as 2060 South 51st Avenue, Phoenix, AZ (the "TREA Lease"), and nothing in this Order shall grant or confer a lien on or security interest in the TREA Lease; provided, however, that all proceeds, if any, of the sale, assignment, transfer or other disposition of the TREA Lease shall be included in the Prepetition Collateral and Postpetition Collateral and subject to the Replacement Liens and Postpetition Liens, respectively.

22.     No Waiver.  Agents and Lenders shall not be deemed to have suspended or waived any of their rights or remedies under the Interim Order, this Order, the Prepetition

-19-

Documents, the Postpetition Documents, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Agents or the Lenders, as applicable, and directed to Debtors.  No failure of Agents or Lenders to require strict performance by Debtors (or by any Trustee) of any provision of the Interim Order, this Order shall (i) waive, affect or diminish any right of Agents or Lenders thereafter to demand strict compliance and performance therewith, and no delay on the part of Agents or Lenders in the exercise of any right or remedy under the Interim Order, this Order, the Prepetition Documents, the Postpetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy.  Further, no such failure or delay of Agents or Lender shall subject Agent or Lenders to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to Agents or Lenders.  Further, neither the Interim Order nor this Order constitutes a waiver by Prepetition Agent or the Prepetition Lenders of any of their rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation their right to later assert: (1) that, any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

23.  <u>Maintenance of Collateral and Insurance</u>.

(a)  <u>Maintenance of Collateral</u>.  Unless the Postpetition Agent, acting at the direction of the applicable "Required Lenders" (as defined in the Postpetition Documents), otherwise consents in writing, until (i) the Payment in Full or otherwise acceptable satisfaction of all Postpetition Debt is made and (ii) the termination of the Postpetition Agent's and Postpetition Lenders' obligations to extend credit under the Postpetition Documents, Debtors shall comply with the covenants contained in the Postpetition Documents regarding the maintenance and insurance of the Postpetition Collateral.

(b)  <u>Insurance</u>.  Until the Postpetition Debt has been indefeasibly paid in full, at all times, the Debtors shall maintain casualty and loss insurance coverage for the Aggregate Collateral on substantially the same basis as maintained prior to the Petition Date.  Upon entry of this Order and subject to the terms of the Debtors' leases for non-residential real property, the Postpetition Agent (on behalf of the Postpetition Lenders) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each

insurance policy maintained by the Debtors that in any way relates to the Postpetition Collateral <u>provided</u>, that the rights granted herein shall not interfere with or affect any rights held by a landlord to insurance proceeds for damage to a landlord's property.

24.    <u>No Control</u>.  None of the Postpetition Agent, the Postpetition Lenders, the Prepetition Agent, or the Prepetition Lenders controls the Debtors or their operations, has authority to determine the manner in which any of the Debtors' operations are conducted or is a control person or "insider" (as defined in section 101(31) of the Bankruptcy Code) of the Debtors or any of their affiliates by virtue of any of the actions taken through the date of this Order with respect to, in connection with, related to, or arising from the Interim Order, this Order, the Postpetition Debt, the Postpetition Documents, the Prepetition Debt, and/or the Prepetition Documents.

25.    <u>Release</u>.  Subject to entry of this Order, upon the date that the Postpetition Debt is paid in full in cash and prior to the release of the Postpetition Liens, Debtors shall execute and deliver to Postpetition Agent and Postpetition Lenders a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Postpetition Documents.

26.    <u>Amendments</u>.  Debtors, Postpetition Agent and the Postpetition Lenders required under the Postpetition Credit Agreement may enter into amendments or modifications of the Postpetition Documents or the Budget without further notice and hearing or order of this Court; <u>provided</u>, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

27.    <u>Proof of Claim</u>.  Neither the Prepetition Agent nor any of the Prepetition Lenders shall be required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in the Interim Order and this Order shall constitute an informal proof of claim in respect thereof.  Notwithstanding the foregoing or any subsequent order of the Court concerning proof of claim filing requirements (unless such order of the Court expressly supersedes this paragraph), Prepetition Agent is authorized (but not obligated) to file a single master proof of claim in Case No. 25-10674 (TMH) on behalf of itself and the Prepetition Lenders on account of their claims arising under the Prepetition Documents and hereunder and such master proof of claim shall be deemed filed as a claim against each of the Debtors.

28.     <u>Binding Effect</u>.  Except as provided in Paragraph 9 herein, the Interim Order and this Order shall be binding on all parties in interest in the Cases and their respective successors and assigns, including any Trustee.  In accordance with sections 364(e) and 363(m) of the Bankruptcy Code, in the event any or all of the provisions of the Interim Order or this Order are hereafter reversed, modified, amended, or vacated by a subsequent order of this Court, or any other court, the Prepetition Agent, the Prepetition Lenders, the Postpetition Agent, and the Postpetition Lenders are entitled, upon entry of this Order, to the protections provided in section 364(e) of the Bankruptcy Code. Any such reversal, modification, amendment, or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby.  Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

29.     <u>Survival</u>.  The provisions of the Interim Order and this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court.  The terms and provisions of the Interim Order and this Order, including, without limitation, the rights granted Postpetition Agent and Postpetition Lenders under Code §§ 364(c) and (d), shall continue in full force and effect until all of the Aggregate Debt is indefeasibly paid in full in cash and discharged.

30.     <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to interpret and enforce the provisions of this Order.

Dated:  _____, 2025

# EXHIBIT A

# DEFINED TERMS

1.      ***Aggregate Collateral***.   Collectively, the Prepetition Collateral and the Postpetition Collateral.

2.      ***Aggregate Debt***.   Collectively, the Prepetition Debt and the Postpetition Debt.

3.      ***Allowable 506(b) Amounts***.   To the extent allowable under Code § 506(b), (i) all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget) and (ii) all costs and expenses at any time incurred by Prepetition Agent and Prepetition Lenders in connection with: (a) the negotiation, preparation and submission of the Interim Order, this Order and any other order or document related hereto, and (b) the representation of Prepetition Agents and Prepetition Lenders in the Cases, including in defending any Challenge.

4.      ***Blocked Account***.   A deposit account of a Debtor that is subject to an account control agreement in favor of Prepetition Agent, in form and substance acceptable to Prepetition Agent.

5.      ***Budget***.   The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, as may be agreed to by Postpetition Agent and "Required Lenders" (as defined in the Postpetition Credit Agreement) in accordance with the Postpetition Credit Agreement.

6.      ***Carveout***.   Collectively, (a) all fees required to be paid to the clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United State Code (plus any applicable interest at the statutory rate), and (b) with respect to each Carveout Professional, the allowed fees and disbursements of as may be awarded to such Carveout Professional at any time by order of the Bankruptcy Court pursuant to the Code § 330, in the aggregate amount set forth in Paragraph 7 of this Order.

7.      ***Carveout Professionals***.   Persons and firms retained by the Debtors and any Committee pursuant to section 327 or 328 of the Bankruptcy Code, Michael Ragano and Novo Advisors, LLC.

8.      ***Cases***.   The chapter 11 cases or any superseding chapter 7 cases of the Debtors.

9.      ***Cash Collateral***.   All "cash collateral," as that term is defined in Code § 363(a), in which Agents (on behalf of Lenders) have an interest, all deposits subject to setoff rights in favor of Agents and Lenders, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable.

10.    ***Challenge***.  A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens or any other claims or causes of action against Prepetition Agent and Prepetition Lenders, which Debtors, the Committee, or another party-in-interest may bring, in accordance with Paragraph 9 of this Order.

11.    ***Challenge Party***.  The Committee, any Trustee, or other party-in-interest.

12.    ***Code***.  The United States Bankruptcy Code (11 U.S.C. § 101 *et seq*.), as amended, and any successor statute.  Unless otherwise indicated, all statutory section references in this Order are to the Code.

13.    ***Committee***.  Any official creditors' committee appointed to represent unsecured creditors in these Cases pursuant to Code § 1102.

14.    ***DIP Commitment***.  $10,000,000, of which $5,000,000 was immediately available upon entry of the Interim Order to be drawn during the period commencing on the entry of the Interim Order and until entry of this Order in accordance with the terms and conditions set forth in the Postpetition Credit Agreement.

15.    ***Event of Default***.  At Postpetition Agent's election, (a) the occurrence and continuance of any event of default first arising after the Filing Date under the Postpetition Credit Agreement; and (b) Debtors failure to comply with the covenants or perform any of their obligations in strict accordance with the terms of the Interim Order and this Order.

16.    ***Filing Date***. April 8, 2025.

17.    ***Final Hearing***.  The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

18.    ***Guarantors***. The "Guarantors", as that term is defined in the Postpetition Credit Agreement.

19.    ***Guaranty***. The Guarantee and Collateral Agreement, as defined in the Prepetition Credit Agreement.

20.    ***Interim Order***. That certain Order Authorizing Applicable Debtors: to (A) Use Cash Collateral on an Emergency Basis Pending a Final Hearing; (B) Incur Postpetition Debt on an Emergency Basi9s Pending Final Hearing; and (C) Grant Adequate Protection and Provide Security and Other Relief to NXT Capital, LLC as Agent and the Lenders [Doc. No. 53].

21.    ***Investigation Period***.  The period of (x) August 6, 2025 (or longer for cause shown) with respect to any Challenge against any party holding an economic interest in the Term B Loan Obligations (as defined in the Prepetition Credit Agreement) or (y) with respect to any other potential Challenge, June 22, 2025.

22.    ***Obligations***.  The "Obligations", as that term is defined in the Postpetition Credit Agreement.

23.    ***Paid in Full*** or ***Payment in Full***.  With respect to the Postpetition Debt or the Prepetition Debt: (a) the termination of the Postpetition Credit Agreement and the other

Postpetition Documents or the Prepetition Credit Agreement and the other Prepetition Documents, as applicable; (b) the indefeasible payment in full in cash of all Postpetition Debt or Prepetition Debt, as applicable, together with all accrued and unpaid interest and fees thereon; (c) all commitments under the Postpetition Credit Agreement or commitments under the Prepetition Credit Agreement, as applicable, shall have terminated or expired; (d) Prepetition Agent shall have received cash collateral in such amount as the Prepetition Agent, as applicable, deems is reasonably necessary to secure all contingent reimbursement obligations relating to any "Letters of Credit" (as defined in the Prepetition Credit Agreement); (e) Prepetition Agent shall have received cash collateral in such amount as Prepetition Agent deems is reasonably necessary to secure all Secured Hedging Obligations and Bank Product Liabilities; (f) the indefeasible payment or repayment in full in cash of any and all other "Obligations" (as defined in the Postpetition Credit Agreement) or "Obligations" (as defined in the Prepetition Credit Agreement); (g) all claims of the Postpetition Grantors against Postpetition Agent and Postpetition Lenders, or of Prepetition Grantors against Prepetition Agent and Prepetition Lenders, as applicable, arising on or before the payment date shall have been released on terms acceptable to Postpetition Agent or Prepetition Agent, as applicable; and (h) Postpetition Agent or Prepetition Agent, as applicable, shall have received cash collateral in such amount as Postpetition Agent or Prepetition Agent, as applicable, deems is reasonably necessary to secure Postpetition Agent and the other Postpetition Lenders, or Prepetition Agent and the other Prepetition Lenders, as applicable, in respect of any asserted or threatened (in writing) claims, losses, demands, actions, suits, proceedings, investigations, liabilities, fines, fees, costs, expenses (including attorneys' fees and expenses), penalties, or damages for which any of the Postpetition Agent and the other Postpetition Lenders, or Prepetition Agent and the other Prepetition Lenders, as applicable, may be entitled to indemnification or reimbursement by any Debtor pursuant to the terms of the Postpetition Credit Agreement, the other Postpetition Documents, the Prepetition Credit Agreement, or the other Prepetition Documents.

24. ***Permitted Priority Liens***. Collectively, (a) the Carveout, (b) liens in favor of third parties upon the Prepetition Collateral, which third-party liens (including, without limitation, liens in favor of Clarus Capital Funding I, LLC upon the Specified Leased Property, so long as such Specified Leased Property is not subject to a lease for purposes of Code § 365), as of the Filing Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Filing Date or perfected subsequent to the Filing Date as permitted by section 546(b) of the Bankruptcy Code, and (c) the Adequate Assurance Deposit (as defined in the Debtors' Motion for Entry of Interim and Final Order (i) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Utility Services, (ii) Approving Proposed Adequate Assurance of Payment to Utility Providers and Authorizing Debtors to Provide Additional Assurance, (iii) Establishing Procedures to Resolve Requests for Additional Assurance and (iv) Granting Related Relief, Doc. No. 9).

25. ***Permitted Variance***. The permitted variance set forth in Section 7.14.1 of the Postpetition Credit Agreement, as the same may be amended or otherwise modified from time to time in accordance with the Postpetition Credit Agreement.

26. ***Postpetition Charges***. Interest at the applicable rate of interest under the Postpetition Credit Agreement and all fees, costs, and expenses provided for in the Postpetition Credit Agreement, including those incurred by Postpetition Agent and Postpetition Lenders in

connection with the Postpetition Debt (regardless of whether any such fees, costs, interest and other charges are included in the Budget).

27.    ***Postpetition Collateral***.  All of the real and personal property of Debtors of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (including, claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Postpetition Credit Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

28.    ***Postpetition Credit Agreement***.  That certain Debtor-in-Possession Credit Agreement dated as of April 10, 2025, by and among "Borrowers" (as defined in the Postpetition Credit Agreement), Postpetition Agent and Postpetition Lenders party thereto, as amended, modified, supplemented, replaced or refinanced from time to time.

29.    ***Postpetition Debt***.  All indebtedness or obligations of Debtors to Postpetition Agent and Postpetition Lenders incurred on or after the Filing Date pursuant to the Interim Order and this Order or otherwise, including all Obligations and any advances made by Postpetition Lenders to pay the Carveout.

30.    ***Postpetition Documents***.  The Postpetition Credit Agreement and the "Loan Documents" (as that term is defined in the Postpetition Credit Agreement).

31.    ***Postpetition Grantors***,  The "Borrowers" and "Guarantors" (as each such term is defined in the Postpetition Credit Agreement).

32.    ***Postpetition Liens***.  Priority Liens in the Aggregate Collateral, subject only to Permitted Priority Liens.

33.    ***Prepetition Collateral***.  Collectively, (a) all of the "Collateral" (as that term is defined in the that certain Guarantee and Collateral Agreement dated as of June 15, 2018, by and among Prepetition Grantors and Prepetition Agent (on behalf of the Prepetition Lenders)) existing as of the Filing Date, (b) all real property of the Loan Parties (as defined in the Prepetition Documents) that is encumbered by a Mortgage (as defined in the Prepetition Credit Agreement) as of the Petition Date, and (c) all proceeds, rents, issues, profits and products of each of the assets described in the foregoing clauses (a) and (b).

34.    ***Prepetition Credit Agreement***.  That certain Credit Agreement dated as of June 15, 2018, by and among "Borrowers" (as defined in the Prepetition Credit Agreement), Prepetition Agent and Prepetition Lenders party thereto, as amended, modified and supplemented from time to time.

35.    ***Prepetition Debt***.  (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including all "Obligations" (as defined in the Prepetition Credit Agreement), and all fees, costs, interest, and expenses as and when due and payable pursuant to the Prepetition Documents, <u>plus</u> (b) all Allowable 506(b) Amounts.

36.    ***Prepetition Documents***.  The Prepetition Credit Agreement and the "Loan Documents" (as that term is defined in the Prepetition Credit Agreement).

37.    ***Prepetition Grantors***.  The "Borrowers" and "Guarantors" (as each such term is defined in the Prepetition Credit Agreement).

38.    ***Prepetition Liens***.  Prepetition Agent's (on behalf of Prepetition Lenders) asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

39.    ***Prepetition Third Party Documents***.  Collectively, Prepetition Grantors' deposit account control agreements, leases, licenses, landlord agreements, warehouse agreements, bailment agreements, insurance policies, contracts or other similar agreements in which Prepetition Agent has an interest.

40.    ***Priority Liens***.  Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law.

41.    ***Real Property***.  Any estate or interests in real property now owned or hereafter acquired by a Debtor or one of its subsidiaries and improvements thereon.

42.    ***Replacement Liens***.  Priority Liens in the Postpetition Collateral granted to Prepetition Agent (for the benefit of the Prepetition Lenders) pursuant to the Interim Order and this Order, subject only to the Postpetition Liens and the Permitted Priority Liens.

43.    ***Sale Covenants.***  Those covenants set forth in Paragraph 10 of this Order.

44.    ***Termination Date***.  At Postpetition Agent's election, the earliest to occur of:  (a) the Maturity Date, (b) the date on which Postpetition Agent provides written notice to counsel for Debtors and counsel for any Committee of the occurrence and continuance of an Event of Default and (c) the date on which the Aggregate Debt is Paid in Full.

45.    ***Trustee***.  Any trustee appointed or elected in the Cases.

## EXHIBIT B

**BUDGET**

**[attached]**