**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ROYAL INTERCO, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-10674 (TMH)<br><br>(Jointly Administered)<br><br>**Hearing Date: May 22, 2025, 10:00 a.m. (ET)**<br>**Re: Docket Nos. 15, 147, and 186** |

**OBJECTION AND RESERVATION OF RIGHTS OF THE AD HOC GROUP OF SECTION 503(B)(9) CLAIMANTS TO THE SALE OF SUBSTANTIALLY ALL THE DEBTORS' ASSETS**

The Ad Hoc Group of Section 503(b)(9) Claimants,[2] by and through their undersigned counsel, hereby file this objection and reservation of rights ("Objection") to the above-captioned debtors and debtors in possession (collectively, the "Debtors") *Motion for (I) An Order Pursuant to Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Approving the Debtors' Entry Into Stalking Horse Agreement and Related Bid Protections; (C) Approving Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (D) Scheduling an Auction and Sale Hearing; (E) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (F) Granting Related Relief; (II) An Order (A) Approving the Sale of the Debtors' Assets Free and Clear of Claims, Liens, and*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: Royal Interco, LLC (7913); Doubletree Paper Mills, L.L.C. (1830); Royal Paper, LLC (9937); and Sun Paper Company, LLC (7899). The Debtors' mailing address is 711 North 17th Avenue, Phoenix, AZ 85007.

[2] The members of the Ad Hoc Group of Section 503(b)(9) Claimants are International Paper Corporation ("IPC") and Print Pro, Inc. ("PPI"). PPI is a member of the Official Committee of Unsecured Creditors ("Committee"). Docket No. 79.

17331930/5

*Encumbrances; and (B) Approving the Assumption and Assignment of Designated Executory Contracts and Unexpired Leases; and (III) Certain Related Relief* [Docket No. 15] ("<u>Sale Motion</u>") pursuant to the *Supplemental Notice of Sale Hearing* [Docket No. 147] ("<u>Supplemental Sale Notice</u>"). In support of this Objection, the Ad Hoc Group of Section 503(b)(9) Claimants respectfully states as follows:

## PRELIMINARY STATEMENT

1. Despite an increased purchase price of approximately $54 million, the Debtors have not provided any indication that the proposed Sale will pay creditors holding administrative expenses pursuant to Bankruptcy Code section 503(b)(9) ("<u>503(b)(9) Claims</u>")[3] and have presented no evidence of a path to a confirmable plan or liquidity for an orderly winddown to account for the payment of such administrative claims.

2. Prior to the auction, the Debtors represented the estates lacked the necessary liquidity to pay 503(b)(9) Claims in light of its prepetition secured debt. The Debtors should be required to pay those trade creditors, whose claims are entitled to allowed administrative priority under the Bankruptcy Code, and reserve funds necessary to pay these expenses before paying secured creditors out of Sale proceeds. The Debtors' Sale should be approved only if it provides a path to payment of the administrative expense claims – in full – including those of the Ad Hoc Group of Section 503(b)(9) Claimants and similarly situated section 503(b)(9) creditors to minimize any continued risk of administrative insolvency of these Chapter 11 Cases and increase the Debtors' ability to carry out a feasible plan or liquidation process.

3. The Debtors filed the Supplemental Sale Notice days prior to the auction, which suggested that section 503(b)(9) claimants were required to file an objection to the Sale in order

---

[3] The Debtors have represented that there is approximately $2 million in 503(b)(9) Claims in these Chapter 11 Cases. *See* Hr'g Tr. at p. 27:2-7.

to preserve their rights to their payment of the Debtors' administrative expenses. Docket No. 147. This Notice should not be construed as a bar to assert claims. It remains unclear whether all holders of potential section 503(b)(9) Claims were served the Supplemental Sale Notice and whether this was an effort to potentially limit the ability to assert their claims.

4. The Sale should not be approved until the Debtors show that the allowed 503(b)(9) Claims of the Ad Hoc Group of Section 503(b)(9) Claimants and other section 503(b)(9) claimants will be paid in these Chapter 11 Cases. To the extent necessary, Sale proceeds should also be set aside pending a full accounting, with any disputes relating to the validity or priority of such claims to be determined by the Court.

## BACKGROUND

5. On April 8, 2025 ("Petition Date"), the Debtors commenced these cases ("Chapter 11 Cases") pursuant by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware ("Court").

6. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses as debtors in possession.

7. On April 18, 2025, the United States Trustee appointed the Committee pursuant to Bankruptcy Code § 1102(a)(1). Docket No. 79.

8. On April 8, 2025, the Debtors filed the Sale Motion, seeking approval of the Bid Procedures[4] in connection with the proposed sale of substantially all their assets ("Sale") and

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Sale Motion or the *Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Claims With Superpriority Administrative Expense Status, (III) Granting Adequate Protection to the Prepetition Lenders, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Docket No. 16] ("DIP Motion").

3

17331930/5

authorization to enter into that certain stalking horse agreement ("Stalking Horse Agreement") with Sofidel America, Corp. ("Sofidel"). Sale Motion, ¶ 6. The Stalking Horse Agreement provided that Sofidel will purchase substantially all the Debtors' assets free and clear of all liens for the Base Purchase Price of $126 million, plus the Inventory Adjustment Amount, minus the Sale Leaseback Adjustment, minus the Cure Costs Adjustment Amount, and the assumption of the Assumed Liabilities, including payment of the Cure Amounts. *See* Sale Motion, ¶ 7. There were no assurances that allowed 503(b)(9) Claims would be assumed or paid by Sofidel, if it were named the successful bidder or paid through Sale proceeds.

9. On May 2, 2025, at the "second day" hearing, the Court approved the proposed Bid Procedures and authorized the Debtors to enter into the Stalking Horse Agreement. *See Order Pursuant to Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bid Procedures for the Sale of Substantially all of the Debtors' Assets; (B) Approving the Debtors' Entry into Stalking Horse Agreement and Related Bid Protections; (C) Approving Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (D) Scheduling an Auction and Sale Hearing; (E) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (F) Granting Related Relief* [Docket No. 149] ("Bid Procedures Order").

10. The Court also approved the Debtors' DIP Motion, which authorized postpetition financing in the amount of $10 million in accordance with a proposed budget that does not include payment of allowed 503(b)(9) Claims. The Office of the United States Trustee and the Committee raised concerns that section 503(b)(9) claimants may not have been served the DIP Motion, despite the DIP Motion and the DIP Budget not accounting for payment of the 503(b)(9) Claims.

17331930/5

11. On May 5, 2025, the Debtors filed the Supplemental Sale Notice. As noted, the Supplemental Sale Notice suggests that section 503(b)(9) claimants were required to both identify the basis for their claims and object to the distribution of Sale proceeds by May 19, 2025.

12. The Supplemental Notice provides in relevant part:

> **PLEASE TAKE FURTHER NOTICE THAT, IN CONNECTION WITH THE SALE, THERE ARE PROVISIONS IN THE PROPOSED SALE ORDER DIRECTING THE PAYMENT OF THE PROCEEDS OF THE SALE TO THE DEBTORS' LENDERS, FREE AND CLEAR OF ANY LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES OF ANY KIND.**
>
> **PLEASE TAKE FURTHER NOTICE THAT, THERE IS CURRENTLY NO EXPECTATION OF, OR PROVISION FOR, PAYMENT OF CLAIMS ASSERTED UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE, WHICH GRANTS ADMINISTRATIVE PRIORITY TO CERTAIN CLAIMS OF CREDITORS FOR THE VALUE OF ANY GOODS RECEIVED BY THE DEBTORS WITHIN 20 DAYS BEFORE THE COMMENCEMENT OF THE CHAPTER 11 CASES IF THE GOODS WERE SOLD TO THE DEBTORS IN THE ORDINARY COURSE OF BUSINESS.**
>
> **PLEASE TAKE FURTHER NOTICE THAT, IF YOU BELIEVE YOU HAVE AN ADMINISTRATIVE PRIORITY CLAIM PURSUANT TO SECTION 503(B)(9) OF THE BANKRUPTCY CODE, YOU SHOULD FILE AN OBJECTION BY MAY 19, 2025 AT 4:00 P.M. (PREVAILING EASTERN TIME) (THE "503(B)(9) OBJECTION DEADLINE") (I) IDENTIFYING THE BASIS FOR YOUR ASSERTED ADMINISTRATIVE PRIORITY CLAIM AND (II) OBJECTING TO THE PAYMENT OF THE SALE PROCEEDS TO THE DEBTORS' LENDERS.**

13. Although no bar date has been set in these Chapter 11 Cases, the Supplemental Sale Notice may effectively fix a bar date for all section 503(b)(9) claimants, as failure to object could result in the waiver or forfeiture of administrative expense payments from the Sale proceeds.

14. On May 16, 2025, the Debtors filed its *Notice of Successful Bidder, Back-Up Bidder, and Auction Results for the Sale of the Acquired Assets* [Docket No. 186] ("Auction Notice"). The Auction Notice provides that Sofidel was named the successful bidder with a

Successful Bid of $180 million, which will be set forth in definitive documentation, with a backup bid by Kimberly-Clark Corporation.

**OBJECTION**

15. The Debtors' Supplemental Sale Notice suggests that 503(b)(9) Claims need to be asserted as part of the Sale process or rights to payment could be affected. Such a sale structure is detrimental to the rights of holders of 503(b)(9) Claims and should be disregarded by the Court as part of the Sale process and approval of the Sale. The Sale, if approved, should account for the rights of allowed 503(b)(9) Claims and should provide an avenue for payment as part of the administration of these Chapter 11 Cases.

16. The Court should not approve the Sale if it benefits only the Debtors' secured creditors without regard to treatment of allowed 503(b)(9) Claims. Courts in this District have routinely recognized that a secured lender cannot leverage a section 363 sale for its own benefit without bearing the associated costs (i.e., "pay the freight"). *See e.g.*, *In re Golden Cnty. Foods, Inc.*, Hr'g Tr. at 11:22-24 [D.I. 175], Case No. 15-11062 (KG) (Bankr. D. Del. June 22, 2015) (requiring sale proceeds in excess of postpetition financing obligations be available to pay administrative expense claims prior to the payment of certain alleged prepetition secured debt); *In re Family Christian, LLC*, Hr'g Tr. at 100:17-20, Case No. 15-00643 (JTG) (Bankr. W.D. Mich. Apr. 14, 2015) ("I think we'll have a problem at the Sale Hearing if the administrative expenses are not to be paid in connection with the sale."); *In re NEC Holdings Corp.*, Hr'g Tr. at 23:25–24:1, Case No. 10-11890 (KG) (Bankr. D. Del. July 13, 2010) (noting secured creditors have "got to the pay the freight, and . . . the freight is certainly an administratively solvent estate."); *In re Townsends, Inc.*, Hr'g Tr. 39:24–40:1, Case No. 10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011) (highlighting once realizing section 503(b)(9) claims would not be paid in full, the Court stated:

"Well, we've got a problem. Not going to run an administratively insolvent estate."); *In re AFA Invs. Inc.*, Case No. 12-11127 (MFW) (Bankr. D. Del. July 12, 2012) (requiring sale proceeds in excess of postpetition financing obligations to be held in escrow until a later date pending resolution of administrative claims); *In re Encore Healthcare Assocs.*, 312 B.R. 52, 54–55 (Bankr. E.D. Pa. 2004) (denying bidding procedures motion finding that section 363 sale served no legitimate business purpose where lenders were simply utilizing the chapter 11 process to arrange a section 363 sale to be followed by a conversion to chapter 7, all while not providing for payment of all chapter 11 administrative expense claims).

17. It is inappropriate to use the chapter 11 process to facilitate a section 363 sale for the sole benefit of a secured lender if there is no real possibility a plan will be confirmed, assurance of administrative solvency after the sale, or ability to pay 503(b)(9) Claims. With the increased purchase price following the auction, it is unclear whether the Debtors are continuing to attempt to use section 363 to transfer assets without payment of all administrative expenses. While the Debtors have not publicly identified the universe of 503(b)(9) Claims, testimony was offered at the second day hearing that it is approximately $2 million. *See* Hr'g Tr. at p. 27:2-7. There was considerable discussion concerned this figure at the second day hearing. *See, e.g.*, *id*. at 27:15-16, 30:21-25, 36:6-8, 43:9-23, 44:22-25. At the time, the Debtors made no provision for the payment 503(b)(9) Claims.

18. The discussion at the hearing occurred prior to the auction which resulted in a significant increase to the proposed sale of the Debtors' assets. Yet, even after the auction, it is unclear whether section 503(b)(9) Claims will be paid through the chapter 11 process and whether funds will remain after valid secured debt is paid. The Ad Hoc Group of Section 503(b)(9) Claimants objects to the approval of the Sale without addressing payment of allowed 503(b)(9)

Claims and the continued administrative solvency of the Chapter 11 Cases.

A.  **Section 503(b)(9) Priority and the Ad Hoc Group of Section 503(b)(9) Claimants' Request for 503(b)(9) Expenses.**

19.  Section 503(b)(9) of the Bankruptcy Code provides for the allowance, as an administrative expense, of the value of any goods sold in the ordinary course of business and received by a debtor within twenty (20) days before a petition date. Specifically, section 503(b)(9) provides:

> (b) After notice and a hearing, there shall be allowed, administrative expenses . . . including—
>
> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under [the Bankruptcy Code] in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9).

20.  Based on section 503(b)(9)'s plain language, Wednesday, March 19, 2025, is the cutoff date for 503(b)(9) Claimants (i.e., 20 days before the Petition Date).

　　i.  **International Paper Corporation**

21.  IPC and debtor Royal Paper, LLC ("Royal Paper"), a Debtor entity, entered into that certain Agreement for the Purchase and Sale of Pulp on December 12, 2024 ("IPC Agreement"). Attached hereto as **Exhibit A** is a true and correct copy of the IPC Agreement. The IPC Agreement's effective date runs from January 1, 2025, to December 31, 2025. IPC Agreement, Section 2. Pursuant to the IPC Agreement, Royal Paper procured goods from IPC in the ordinary course of business.

22.  From March 25, 2025, to April 28, 2025, Royal Paper received $468,788.23 worth of goods sold from IPC in the ordinary course of Royal Paper's business. Attached hereto as **Exhibit B** is an account statement outlining such amounts.

23.     Royal Paper purchased goods from IPC in the ordinary course of its business and received the goods at issue within the 20-day period outlined in section 503(b)(9) of the Bankruptcy Code. IPC asserts a 503(b)(9) Claim in an amount not less than $468,788.23.

**ii.     Print Pro, Inc.**

24.     Royal Paper and Sun Paper Company, LLC ("Sun Paper"), a Debtor entity, procured goods from PPI in the ordinary course of their businesses.

25.     On March 21, 2025, Royal Paper received $35,363.90 worth of goods sold from PPI in the ordinary of Sun Paper's business. Attached hereto as **Exhibit C** is an account statement outlining such amounts.

26.     On March 28, 2025, Sun Paper received $5,676.16 worth of goods sold from PPI in the ordinary of Royal Paper's business. Attached hereto as **Exhibit D** is an account statement outlining such amounts.

27.     Royal Paper and Sun Paper purchased goods from PPI in the ordinary course of their businesses and received the goods at issue within the 20-day period outlined in section 503(b)(9) of the Bankruptcy Code. PPI asserts a 503(b)(9) Claim in an amount not less than $41,040.06.

**B.     Reservation of Rights.**

28.     The Ad Hoc Group of Section 503(b)(9) Claimants reserve all rights to supplement or amend this Objection at or prior to the Sale Hearing and to formally assert any right to payment under section 503(b)(9) of the Bankruptcy Code pursuant to a Court ordered bar date in connection with these Chapter 11 Cases or otherwise, including through a motion. Nothing contained herein or omitted from this Objection constitutes an admission or stipulation by the Ad Hoc Group of Section 503(b)(9) Claimants with respect to any alleged claims against the Debtors or any other

parties, as applicable, including but not limited to (i) the amount, validity, enforceability of any alleged claims against the Debtors and (ii) the extent, validity, priority, or perfection of any alleged liens and security interests in the Debtors' Assets.[5]

## CONCLUSION

WHEREFORE, the Ad Hoc Group of Section 503(b)(9) Claimants respectfully requests that this Court sustain this Objection for the reasons as provided herein, and grant them such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: May 19, 2025

**MORRIS JAMES LLP**

*/s/ Eric J. Monzo*
Jeffrey R. Waxman (DE Bar. No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Jason S. Levin (DE Bar No. 6434)
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
Email: jwaxman@morrisjames.com
         emonzo@morrisjames.com
         jlevin@morrisjames.com

*Counsel to the Ad Hoc Group of Section 503(b)(9) Claimants*

---

[5] The Ad Hoc Group of Section 503(b)(9) Claimants reserve all rights with respect to the claims and amounts, including the assertion of administrative priority status under other sections of the Bankruptcy Code. Section 503(b)(9) claimants should not be required to further preemptively defend their rights – particularly if they were not provided clear notice and the opportunity to be heard in connection with those claims.

17331930/5