IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ROYAL INTERCO, LLC, *et al.*,[1] | ) | Case No. 25-10674 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No. 15, 168, 169, 187, 189** |
| | ) | |

**RESPONSE OF NXT CAPITAL, LLC, AS PREPETITION AGENT AND POSTPETITION AGENT, TO OBJECTIONS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THE UNITED STATES TRUSTEE, AND THE AD HOC GROUP OF 503(b)(9) CLAIMANTS TO DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

NXT Capital, LLC, as Prepetition Agent and Postpetition Agent,[2] responds to the objections of the Official Committee of Unsecured Creditors (the "Committee") ([D.I. 168, 189], the "Committee Objection"), the objection of the United States Trustee ("UST") ([D.I. 169], the "UST Objection"), and the objection of the Ad Hoc Group of Section 503(b)(9) Claimants (the "Ad Hoc Group of Section 503(b)(9) Claimants") ([D.I. 187], the "Ad Hoc Group of Section 503(b)(9) Claimants Objection"; and together with the Committee Objection, and the UST Objection, collectively, the "Objection") to the Sale Motion, and states as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal EIN, are as follows: Royal Interco, LLC (7913); Doubletree Paper Mills, L.L.C. (1830); Royal Paper, LLC (9937); and Sun Paper Company, LLC (7899). The Debtors' mailing address is 711 North 17th Avenue, Phoenix, AZ 85007.

[2] Capitalized terms used but not defined herein shall have the meanings given in the *Debtors' Motion for (I) an Order Pursuant to Sections 105, 363, 364, 365 and 541 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9007 and Del. Bankr. L.R. 2002-1 and 6004-1 (A) Approving Bid Procedures for the Sale of Substantially All of the Debtors' Assets; (B) Approving the Debtors' Entry Into Stalking Horse Agreement and Related Bid Protections (C) Approving Procedures for the Assumption and Assignment or Rejection of Designated Executory Contracts and Unexpired Leases; (D) Scheduling an Auction and Sale Hearing; (E) Approving Forms and Manner of Notice of Respective Dates, Times, and Places in Connection Therewith; and (F) Granting Related Relief; (II) an Order (A) Approving the Sale of the Debtors' Assets Free and Clear of Claims, Liens, and Encumbrances; and (B) Approving the Assumption and Assignment of Designated Executory Contracts and Unexpired Leases; and (III) Certain Related Relief* ([D.I. 15], the "Sale Motion").

6492.274

RLF1 33008630v.1

**PRELIMINARY STATEMENT**

1.  The Committee's objection has essentially three parts: (i) paragraph 13 of the Final DIP Order[3] should be disregarded and this Court should alter the rights of the Prepetition Agent and Postpetition Agent to be paid all proceeds from the sale of its collateral; (ii) other administrative creditors, namely holders of hypothetical section 503(b)(9) claims, should be paid ahead of section 364 and potential section 507(b) claims;[4] and (iii) designated trade creditors should get a non-ratable and non-statutory benefit of having their preference exposure erased. None of these positions are legally valid.

2.  The UST's objection similarly seeks to reorder the priorities of the Bankruptcy Code to require the payment of potential section 503(b)(9) claims and unspecified "administrative claims that arose prior to the sale closing but remained unpaid at that time." UST Objection, ¶ 11.

3.  Both the Committee and the UST also argue, without legal basis, that there must be provision for more money to keep the Debtors in chapter 11 or, in the words of the UST, to "conclude their cases." *Id.*, ¶ 12. Of course, the only source for more funding would be either from the sale proceeds (subject to valid liens in favor of the Prepetition Agent and Postpetition Agent) or somehow compelling incremental funding under section 364 to pay administrative expenses while leaving section 364 advances unpaid. These objections are without merit and are inconsistent with the priorities of the Bankruptcy Code. *See generally Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017).

---

[3] *See Final Order Authorizing Debtors to: (A) Use Cash Collateral; (B) Incur Postpetition Debt; and (C) Grant Adequate Protection and Provide Security and Other Relief to NXT Capital, LLC, as Agent and the Lenders* (as amended, restated, supplemented, or otherwise modified from time to time, [D.I. 146], the "Final DIP Order").

[4] On May 19, 2025, two alleged 503(b)(9) claimants, International Paper Corporation and Print Pro, Inc. (also a member of the Committee), objected to the Sale Motion for substantially the same reasons as asserted by the Committee. This response applies to their 503(b)(9) arguments as well.

4.      Moreover, it is irrelevant and factually incorrect to characterize the Sale process as being run solely for the benefit of the Prepetition Agent and Prepetition Lenders.  As an initial matter, a sale motion should not be denied merely because collateral proceeds will be applied to reduce the senior secured debt.  Further, such characterizations are unsupported by the facts. The Prepetition Lenders have consented to the use of cash collateral and have provided additional financing to enable the Debtors to pay the costs incurred pending the Sale, including payroll, rent, and trade claims.  The Sale as a going concern continues to provide post-closing benefits to third parties other than the Prepetition Lenders, including the assumption and payment of cure amounts for prepetition creditors.  To suggest that "this sale process is tailored exclusively to benefit their secured lenders" fails to acknowledge the additional benefits provided by the Prepetition Lenders.

5.      Neither the Committee nor the UST (or the Ad Hoc Group of Section 503(b)(9) Claimants) have any evidence to counter the Debtors' good business reasons for the Sale Motion. This Court should not disturb the Debtors' valid business judgment to pursue the Sale and should not make new law by requiring that proceeds be used to fund prospective administrative claims or gifts to unsecured creditors that bypass the Bankruptcy Code's priorities.

**REPLY**

**I.     The Committee is bound by the terms of the Final DIP Order.**

6.      After extensive argument, this Court entered the Final DIP Order as submitted.  By agreement (including an increase in its carveout), the Committee waived all other of its extensive objections, including its objection to the provision of the Final DIP Order that required sale proceeds to be paid to the Agents.  As clearly set forth in paragraph 13 of the Final DIP Order, the sole exception to payment of all sale proceeds to the Prepetition Agent and Postpetition Agent was section 507(b) claims: "any allowed 503(b)(9) claims will not be included in the foregoing proviso and the treatment of such allowable 503(b)(9) claims will otherwise be addressed in connection

with such sale order, by assumption by the proposed purchaser, by settlement (as the same may be reduced by operation of 502(d)), or by further order of this Court." Final DIP Order, ¶ 13.

7. At the hearing, this Court stated in particular "I think there's sufficient flexibility built into the DIP -- and specifically looking at Paragraph 13 of the final DIP order -- to allow parties to come forward, and also for the Court to tailor any further relief, should I feel a need to, *to address any issues about 503(b)(9)s in the context of distribution of sale proceeds*." D.I. 165, Transcript of Hearing Held May 2, 2025, at 54:8-13 (emphasis added). There is no exception in paragraph 13 for anything other than the possibility of addressing 503(b)(9) claims.

8. Nevertheless, the Committee's objections are replete with suggestions that this Court should vacate or otherwise ignore paragraph 13 of the Final DIP Order.

9. There is no basis to collaterally attack paragraph 13 of the Final DIP Order. All proceeds from the Sale must be remitted to the Prepetition Agent and Postpetition Agent, with the sole exception with respect to treatment of potential 503(b)(9) claims. Second, despite repeated assertions from both the Committee and the UST that the Bankruptcy Code requires lenders guarantee administrative solvency, there is no factual basis in the record that there are *any* accrued and unpaid administrative expense claims that were incurred *after the petition date* and not earmarked for payment pursuant to the Final DIP Order. Therefore, and consistent with the entered Final DIP Order, absent a factual showing of some other accrued and unpaid administrative expense, the sole focus should be the reserved legal issue with respect to potential 503(b)(9) claims.

II.    **Approval of the Sale Motion does not require payment of prepetition claims entitled to administrative priority under section 503(b)(9).**

10. To date, no potential administrative claimant has asserted a claim to be paid from the Sale proceeds other than two recently asserted claims of approximately $500,000 in the

aggregate. The objecting parties cite to no legal authority or basis in the Bankruptcy Code to subordinate section 364 and section 507(b) claims to claims under 503(b)(9). As argued at the hearing to approve the Final DIP Order, section 506(c) on its face does not apply to 503(b)(9) claims. For these and all of the reasons previously argued by Prepetition Agent and Postpetition Agent in connection with the entry of the Final DIP Order,[5] there is no requirement in the Bankruptcy Code for payment of section 503(b)(9) as a condition to entry of the Sale Order.

### III. The Bankruptcy Code does not require the Sale to leave the Debtors' estates administratively solvent.

11. The Bankruptcy Code does not require the proposed sale to leave the Debtors' estates administratively solvent, and the Committee cites no law that suggests otherwise. 11 U.S.C. §363; *see, e.g.*, *In re YBA Nineteen, LLC*, No. 13-00968, 2016 WL 541347, at *3 (S.D. Cal. Feb. 11, 2016) (approving a section 363 sale despite the debtor's estate being administratively insolvent); *In re Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y.) [D.I. 2886], Transcript of Hearing Held Feb. 7, 2019, at 220 (holding "[t]here is no requirement under the Bankruptcy Code to ensure that a proposed sale of substantially all of the assets of an operating business result in administrative solvency," and noting the "hundreds of cases that result in going concern sales with the subsequent dismissal of the case with unpaid administrative expenses").

12. The question here is not one of administrative solvency, but rather whether the sale will generate the highest value for the assets thereby providing the maximum return to the estates' creditors as determined here by the Debtors as a proper exercise of business judgment. *See In re Real Mex. Rests., Inc.*, No. 11-13122 (BLS) (Bankr. D. Del.) [D.I. 903], Transcript of Hearing Held Feb. 14, 2012, at 192 ("while I recognize that there is an administrative insolvency at present

---

[5] *See Response of NXT Capital, LLC, as Prepetition Agent and Postpetition Agent, to Objection of the Committee of Unsecured Creditors and Objection of the United States Trustee to the Debtors' DIP Financing Motion.* [D.I. 117.]

in this case… I believe that… the administrative insolvency and the circumstances for all creditors would be much worse without this sale"). Judge Shannon further held that the debtors had met their burden to establish a sound business purpose by the continuation of business operations, that a substantial portion of unsecured and administrative creditors would be paid through the sale, and that the apparent alternative of liquidation was "demonstrably worse for many, many creditors, not to mention thousands of employees." *Id.* at 190:19-23.

13. Other Delaware courts also have approved sales over objections even though section 503(b)(9) and/or other administrative expense claims would not be paid. For example, in *In re Allen Family Foods, Inc.*, Case No. 11-11764 (KJC) (Bankr. D. Del.), the committee objected to the sale because it did not provide for payment of 503(b)(9) and other priority/administrative expense claims. *See id.* [D.I. 196], at ¶¶ 21-30. At the hearing, the court provided, "I am troubled by the fact that all 503(b)(9) expenses are not covered." *See id.* [D.I. 225], Transcript of Hearing Held July 27, 2011, at 44:23-45:3. Nevertheless, the court said it would approve the sale because there was "no other better course. . . available to the Debtor and to other constituents." *Id. See also*, *In re Big Lots, Inc*., No. 24-11967 (JKS) (Bankr. D. Del. Nov. 26, 2024) [D.I. 1250] (approving sale that would not yield any distributable value for unsecured creditors where "no alternative sale transaction is available, and the proposed sale does provide for the assumption of unsecured liability and allows [the debtors] to continue as a going concern for the benefit of employees, landlords, vendors, service providers, and others who would transact with the company post-closing. Consequently, the sale benefits the general unsecured creditors, as well as the company's employees and the communities the company serves.").

14. The committee in *In re AFA Investments, Inc.*, Case No. 12-11127 (MFW) (Bankr. D. Del.), also filed an objection that argued the sale should not be approved because it failed to provide for payment of 503(b)(9) claims. *See id.* [D.I. 427] at ¶¶ 11-20. At the hearing, the court

6
RLF1 33008630v.1

approved the sale and authorized payment of the DIP and first lien lenders from the sale proceeds despite the 503(b)(9) issue. *See id.* [D.I. 485], Transcript of Hearing Held July 12, 2012, at 46:2-16.  When the sale was approved, there remained a dispute as to whether any remaining proceeds should be paid to satisfy 503(b)(9) claims or whether they should be paid to the debtors' second lien creditors. *Id.* at 46:17-20.  Accordingly, when the court approved the sale, it remained possible that 503(b)(9) claims would not be paid. *Id.*  The court acknowledged this risk, but approved the sale and the payment of the DIP and first lien lenders, providing, "I am satisfied to pay the first lien lenders, notwithstanding the 503(b)(9) issue that remains because I think that they have paid the freight here . . . even though it is not clear yet whether all administrative claims will be paid in full." *Id.* at 46:2-11.

15.    Finally, counsel for the United States Trustee argued at the final hearing on DIP financing that non-payment of 503(b)(9) claims would be cause for conversion of these cases to cases under chapter 7.  [D.I. 165], Transcript of Hearing Held May 2, 2025, at 47:10-13.  It is unclear what part of section 1112 purportedly would trigger conversion.  Section 1112 does not include "administrative insolvency" (however defined) as cause for conversion. The closest section would be subcluase (b)(4) that defines "cause" to include "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Section 503(b)(9) claims are a poor fit, as those claims are prepetition claims that are merely granted administrative priority under section 503.  Non-payment of those claims do not reflect "continuing loss or diminution" of the estate as these cases were commenced with those claims having been incurred.

**IV.     There is no requirement under applicable law that a sale under section 363(b) of the Bankruptcy Code set aside estate causes of action or "bury" avoidance actions.**

16.     The Committee cites no authority that would compel setting aside encumbered property of the estate and then bypass the priorities of the Bankruptcy Code in order to distribute those escrowed assets for the benefit of general unsecured creditors. This cry for a special "gift" for unsecureds has been silenced by the Supreme Court decision in *Jevic*. *See generally, Jevic*, 580 U.S. 451 (2017). There is no legal basis to apply the proceeds of the Sale other than in accordance with the priorities of the Bankruptcy Code, first to 364 claims, then to prepetition secured claims, then to 507(b) claims and so on.

17.     As articulated in *In re Trans World Airlines, Inc.*, No. 01-00056 (PJW), 2001 WL 1820326 (Bankr. D. Del. Apr. 2, 2001):

> The purpose of a § 363(b) sale is to maximize the benefit to the debtor's entire estate. Where a sale results in disparate treatment of similarly situated creditors the sale may appear to be at the expense of individual creditor constituencies. However, if the sale is in the best interests of the estate it follows that the entire estate suffers in the absence of the sale. In other words, a sale under § 363(b) is intended to benefit the estate by minimizing loss of value to the estate. *There is nothing in the statute that requires a § 363(b) sale to provide a pro rata distribution to all unsecured creditors or even any distribution to all unsecured creditors. Had Congress intended that result, it could have easily drafted the section to so provide.*

*Id.*, at *11 (emphasis added).

18.     Importantly, while "administrative solvency" is aspirational, it is not the purpose of the Bankruptcy Code. As observed by the Third Circuit in *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 128-29 (3d Cir. 2004), "[a]though the Bankruptcy Code contains many provisions that have the effect of redistributing value from one interest group to another, these redistributions are not the Code's purpose. Instead, the purposes of the Code are to preserve going concerns and to maximize the value to the debtor's estate."

## CONCLUSION

19. The proposed Sale is a prudent exercise of the Debtors' business judgment and maximizes value for the benefit of the estate in accordance with applicable law. The Sale benefits the estates through the partial satisfaction of senior secured claims, payment in full of all known post-petition administrative claims, payment of cure amounts and preservation of jobs and go forward business opportunities for trade creditors. This Court should overrule the Committee Objection, the UST Objection, and the Ad Hoc Group of Section 503(b)(9) Claimants Objection.

Dated: May 20, 2025

By: /s/ *John H. Knight*

**RICHARDS, LAYTON & FINGER, P.A.**
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Tel:  302.651.7700
Fax:  302.651.7701
Email: knight@rlf.com
heath@rlf.com

-and-

**GOLDBERG KOHN LTD**
Randall L. Klein (admitted pro hac vice)
Prisca L. Kim (admitted pro hac vice)
Eva Gadzheva (admitted pro hac vice)
55 East Monroe, Suite 3300
Chicago, Illinois 60603
Tel:  312.201.3974
Fax:  312.332.2196
Email:  randall.klein@goldbergkohn.com
            prisca.kim@goldbergkohn.com
            eva.gadzheva@goldbergkohn.com